## Commonwealth *v.* Conklin, Appellant.

Argued March 15, 1960.   Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Lawrence L. Davis,* for appellant.

*Ferdinand F. Bionaz,* District Attorney, with him
*Robert J. Cassidy,* First Assistant District Attorney,
and *Fremont J. McKenrick,* Assistant District Attor-
ney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, May 4, 1960:

This case is ruled by *Commonwealth v. Edwards,*
394 Pa. 335, 147 A. 2d 313 (1959).   The defendant,
Eleanora Avis Conklin, charged with the felonious
homicide of her three year old son, was tried on Decem-
ber 8, 1958, before the Court of Oyer and Terminer of
Cambria County.   A plea of not guilty was entered, but
on December 12, 1958, the jury returned a verdict of
guilty of murder in the first degree and fixed the sen-
tence at life imprisonment.   Defendant's motion for a
new trial and in arrest of judgment was overruled by
the Court *en banc* on November 3, 1959, sentence was
entered by the Court a week later and this appeal fol-
lowed.

The only question raised by the defendant on this
appeal is the sufficiency of the charge to the jury.

Since the learned trial judge gave his charge on December 12, 1958, he was unable to refer to the then unavailable opinion in the *Edwards* case (handed down on January 5, 1959), in which our view in these matters was fully expressed by Justice MUSMANNO. There should no longer be any doubt that in any criminal jury trial conducted in the Commonwealth in which a plea of not guilty is entered by the defendant, the court must adequately instruct the jury on the possible verdict of "not guilty."

The necessity for so instructing the jury was not diminished by the fact that the defendant voluntarily admitted to several witnesses, gave sworn signed statements and later confirmed from the witness stand the details surrounding the killing. Nor was it diminished by the fact that the defendant introduced evidence only to substantiate her two affirmative defenses, insanity at the time of the commission of the crime, and that the defendant was rendered incapable of forming an intent to kill by the voluntary use of drugs. When the accused plead not guilty, she thereby put in issue every single element in the prosecution's case, upon which the prosecution must meet its affirmative burden of proof beyond a reasonable doubt. The district attorney has argued that the defendant never, either before or during the trial, denied the killing. This is in law irrelevant, for it is not the accused who must prove her innocence, but the prosecution who must prove her guilt. If the defendant introduced no evidence whatever, she would still be entitled to a charge on the possibility of a not guilty verdict based on the jury's disbelief of the prosecution's case. We have often stated that a confession of the commission of a crime is not sufficient, in and of itself, to convict. Even though it may obviate the necessity of proving the accused's moral and material participation in whatever happened, it does not obviate the necessity of establishing the ma-

terial and legal existence of a crime. Thus, neither the admission of certain facts by the defendant nor her failure to deny the killing serves to relieve the prosecution of its burden of proof. We need not be reminded of the countless situations where persons confess to crimes of which they are innocent, either out of a desire to cover up for the guilty person or because of a psychological urge to do so. It is therefore necessary to adequately remind the jury in the charge that if the prosecution's evidence fails to convince them beyond a reasonable doubt on any essential element of the prosecution's case, they must return a verdict of not guilty. This holds true whether "the evidence of guilt piles as high as Mt. Everest on Matterhorn, even if the District Attorney conscientiously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar . . . ." *Commonwealth v. Edwards,* supra, at 338.

In the instant case, the trial judge made reference to the presumption of innocence in but one sentence on the third page of a charge that consumed over forty pages in a lengthy record. And although the judge twice stated that the prosecution must produce evidence of the defendant's guilt beyond a reasonable doubt, the first time he did so, he only instructed that proof beyond a reasonable doubt was required for a first degree conviction: "All murder is presumed by law to be murder in the second degree and the burden falls upon the Commonwealth of establishing beyond a reasonable doubt the existence of the elements of murder of the first degree." The second time he mentioned the proposition, the judge nullified a proper charge by stating incorrectly: "If you are not satisfied beyond a reasonable doubt as to the existence of a finding of guilt, then you determine whether the defendant, having the affirmative burden, has satisfied you

by a fair preponderance of the evidence, that she should be excused from the consequences of a higher degree by reason of the drugs, or that she was insane, in which case she would not be answerable at all." Such a charge left the clear implication for the jury that if they had a reasonable doubt, they still should not acquit unless the defendant met the burden of proof required for one of her affirmative defenses.

Toward the end of the charge, the judge instructed, "Now I'm going to tell you about the possible verdicts as I see can be brought in under this evidence, and you have to decide." He then discussed murder in the first degree, murder in the second degree, and not guilty on the ground of insanity. Immediately following this discussion, the judge said: "Isn't that all the possible verdicts? Manslaughter, we are ruling, is not in this case." At this point, the defense interrupted to ask the Court: "Just a moment. There's one more possible verdict, your Honor. What about not guilty?" Following a side bar conference and a further instruction by the judge concerning not guilty by reason of insanity, the defense counsel again asked: "One more thing, your Honor. May this jury acquit this defendant and throw out all of the evidence they heard?" To this the court replied: "You are putting me in the hole. I would say no, in my opinion, but it's up to the jury what they want to do. We can't control that." This was the closest that the court came to an instruction on the possibility of a verdict of not guilty. The charge continued for only one more page of the record before the jury retired to deliberate its verdict. Coming at this crucial point in the charge, the court's statement that it did not think a not guilty verdict was possible could not help but wipe out any prior instructions on burden of proof or presumption of innocence. In so doing, it vitiated an otherwise eminently fair proceeding and deprived the defendant of

a trial in accordance with due process of law.   Pa. Const. Art. I, §9.

Judgment vacated and record remanded for new trial.

----

DISSENTING OPINION BY MR. JUSTICE EAGEN:

I strongly disagree with the conclusion of the majority opinion in this case and must, therefore, dissent.

The facts are for the most part not in serious controversy.   The defendant left her home in Akron, Ohio, in an automobile accompanied by her three year old son, with the definite, preconceived intention of killing him and then committing suicide.   As expressed in her own words, "I wanted to kill him too, because I didn't want anybody else to have him."   She planned to stop at a motel where gas was used for heating purposes and to use the gas in committing suicide. She first stopped overnight in a motel in East Liverpool, Ohio, and was disappointed to find that gas was not used therein.   While there, she wrote two letters, one of which was to her father, indicating her intention to kill her son and then to destroy herself. The next day, she drove into Pennsylvania, stopping on two occasions to purchase a box of sleeping tablets, and finally that night checked in at a motel in the town of Cresson, Cambria County, Pennsylvania.   Finding no gas available on these premises, she first attempted to give the child some of the sleeping tablets, which he refused to swallow.   She then consumed a large quantity of the pills herself, after which she took a towel and held it over the boy's face for approximately ten to fifteen minutes not removing it, "until I knew he was dead" (her own words).   Asphyxiation was the cause of the death.

The following morning, at six-thirty o'clock, she left the motel and drove twenty-six miles, wrecked her car and received injuries to her leg. She was taken to the Conemaugh Valley Memorial Hospital in Johnstown and there disclosed that she had killed her child and that the body could be found in a motel in Cresson.

She was indicted and tried on a general charge of murder. The jury returned a verdict of guilty of murder in the first degree, fixing the punishment at life imprisonment.

The defense was legal insanity. Medical testimony was offered in an attempt to prove that, at the time of the killing, the defendant did not have a clear perception of right and wrong and, of course, if this were true, she would not be legally answerable for her act. The truthfulness of this defense was, of course, for the jury.

At no time did the defendant deny she killed her son. At the Conemaugh Valley Memorial Hospital, she freely disclosed to the doctors and nurses that she had killed him. When arrested, she voluntarily told the state police and the district attorney's representatives the manner and details of the killing. At the trial, she took the stand in her own defense and clearly told how she intended to kill her son and related in detail how she carried it out in cruel fashion.

The trial judge took the position and, in effect, instructed the jury that if the defendant were to be found not guilty, it would necessarily be on the ground of insanity. In other words, he did not specify or categorically say in enumerating or discussing the possible verdicts that the jury could return a verdict of not guilty generally. (In brief, he refused to charge that the jury could disregard completely all of the evidence, including the defendant's own admission of the killing on the stand under oath, and find that the defendant, although sane, did not commit the killing).

This, the majority opinion holds was error and sufficient to warrant a new trial.

How, under the evidence in this case, the defendant, if found to be sane at the time of the killing, could be declared not guilty, I just cannot comprehend; and, if this is correct, what prejudice to the defendant resulted? She never denied the killing. Under oath, before the court and the jury, she admitted killing her son and graphically described the details of how she intentionally suffocated him.

The trial judge in adequate detail explained the presumption of innocence enjoyed by the defendant and everyone else charged with crime in Pennsylvania. He stated, "The defendant was indicted by the grand jury and a true bill was found by that body. However, it is not to be taken in any sense that the mere finding of an indictment by the grand jury is any evidence of guilt. The defendant comes into court clothed with the presumption of innocence, and under our law the presumption of innocence means that the person charged does not have to present evidence to clear himself of a charge, but the Commonwealth ultimately must produce evidence from which the jury can say that the defendant is guilty." He further explained that the Commonwealth has, in the first instance, the burden of establishing the guilt of the defendant beyond a reasonable doubt. He defined the meaning of reasonable doubt in clear and understandable language. Needless to point out, in assessing the correctness and fairness of trial instructions the charge of the court must be read and considered in its entirety: *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820 (1954); *Commonwealth v. Patskin*, 372 Pa. 402, 93 A. 2d 704 (1953).

I agree with the statement in Mr. Justice COHEN's opinion that this Court's ruling in *Commonwealth v. Edwards*, 394 Pa. 335, 147 A. 2d 313 (1959), supports

the conclusion reached herein by the majority. However, I strongly urge that the ruling in that case was illogical and not based on sound reason. It definitely overruled *Commonwealth v. Patskin,* supra, and should now be recognized as and declared to be an unwise decision.

A trial is not a game of skill or sharp maneuvers. Rather is it an orderly legal process designed to ferret out the truth. One of the most important responsibilities of the presiding jurist is to define in clear layman's language the issues for determination by the jury and to explain to them how the facts established by the evidence relate to those issues. There must be some relationship between the law upon which an instruction is based and the evidence in the case. It would be clearly inappropriate to give instructions on some phase of the law not pertinent to the facts, and it is just as unnecessary for the court to devote extended instructions on the possible verdict of "not guilty generally" where, under the evidence, such a finding is not realistic or in truth possible.

I have read and re-read this entire record. If I had any doubt that this defendant enjoyed a fair trial, I would be the first among my brethren to protest vigorously and urge a retrial. I am convinced to the contrary. Also, I am of the firm conviction that to order a new trial in this case IS NOT a proper or commonsense conclusion and that to do so manifests an unwarranted over-zealousness in protecting those who commit crime at the expense of the best interests of the good people in the community. In my opinion, "Justice and common sense are sacrificed, not at the shrine of mercy, but at the shrine of guilt."

Mr. Justice BENJAMIN R. JONES joins in this dissent.