386 A.2d 967

**COMMONWEALTH of Pennsylvania**

v.

**Royce KERCHNER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 24, 1977.

Decided April 28, 1978.

Clayton R. Wilcox, Gettysburg, for appellant.

Donald L. Reihart, Dist. Atty., Floyd P. Jones, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM:

The Court being equally divided, the judgment of sentence is affirmed.

EAGEN, C. J., and ROBERTS and NIX, JJ., believing the evidence is sufficient, would affirm the judgment of sentence. MANDERINO, J., joined by POMEROY and O'BRIEN, JJ., would reverse the judgment of sentence and discharge appellant.

MANDERINO, J., filed an Opinion in Support of Reversal in which POMEROY and O'BRIEN, JJ., joined.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

Appellant, Royce Kerchner, was convicted in a nonjury trial of murder in the third degree. Post-verdict motions were denied, and sentence of three and one-half to seven years imprisonment was imposed. This appeal followed.

Appellant argues in this appeal that the evidence introduced at trial was insufficient to sustain the court's verdict of guilt. I agree, and would therefore reverse the judgment of sentence and order appellant discharged.

The oft stated test for reviewing the sufficiency of the evidence in a criminal case is:

" 'Whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the [fact-finder] could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.' *Commonwealth v. Oates*, 448 Pa. 486, 489, 295 A.2d 337, 338 (1972)."

*Commonwealth v. Stanley*, 453 Pa. 467, 469, 309 A.2d 408, 410 (1973); *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973).

It is also true that while the prosecution must establish every essential element of the crime beyond a reasonable doubt, it may sustain that burden by means of wholly circumstantial evidence, *Commonwealth v. Stanley, supra; Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972); so long as this circumstantial evidence is such as to meet the reasonable doubt standard. *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976).

Furthermore, to be permissible, the inferences drawn from the prosecution's evidence must be based on proven facts as opposed to other inferences, *Commonwealth v. Stanley, supra,* and the inferred fact must follow beyond a reasonable doubt from the proven fact in order to convict. *Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974); *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974) (plurality opinion).

In a homicide case, the prosecution must establish each of three essential elements beyond a reasonable doubt before a conviction may be sustained. Those elements are: (1) that a death occurred; (2) that the death resulted from a criminal agency; and (3) that the defendant is legally responsible for the death. *Commonwealth v. Thomas,* 429 Pa. 227, 239 A.2d 354 (1968). For the reasons that follow, I believe the prosecution in the instant case has failed to establish the last of the above elements.

The trial testimony, viewed in the light most favorable to the prosecution is as follows. On the morning of March 16, 1975, Christine Butcher, a child approximately two years old, was found on the floor of the bedroom in which she had been sleeping. The child's body was cold, and when she could not be awakened, she was taken to York Hospital, where, at 9:00 a. m., she was pronounced dead.

At the time of her death, decedent was living with her mother, Mrs. Karen Butcher, and a younger sister at the home of appellant, appellant's wife, and their three young children. At 4:30 p. m., on the afternoon of March 15, 1976, Christine was left by her mother in appellant's care while Mrs. Butcher and appellant's wife went to visit appellant's mother. At about 7:30 p. m., appellant telephoned his mother's house and reported to his wife and Mrs. Butcher that Christine had tripped and fallen on the carpeted living-room floor, and sustained some minor brush burn injuries to her face. The two women returned home at approximately 8:00 p. m., at which time appellant repeated what he had previously said concerning Christine's injuries, and reported that he had put Christine to bed. Mrs. Butcher testified

that she checked on the child, who appeared to be sleeping normally, and that she observed some bruises on the child's face, but did not notice anything else abnormal.

Mrs. Butcher also testified that on that morning (March 15, 1976), she and appellant's wife had purchased a dress for Christine, and that at approximately 4:15 p. m., she tried the dress on Christine to see if it fit. She testified that in doing so she removed Christine's outer shirt and observed the child's face and abdominal area and recalled that they were clear of cuts and bruises except for a cut on the back of the child's head and for several faded brown spots below the child's stomach. She also testified that Christine did not appear to be in any pain at the time she put the dress on her, and that she appeared normal other than that she was a little sleepy because she had not taken a nap earlier.

The prosecution established through the testimony of a qualified pathologist and a pediatrician that the child had suffered multiple traumatic injuries consisting of a laceration behind the head, multiple bruises on the abdomen, bilateral subdural hematomas of the brain, a perforation of the duodenum, a tear of the spleen, a laceration of the liver, and hemorrhage of the adrenal gland. The physicians expressed their opinions on direct examination that the brain injury resulted either from a direct blow to the head or from a violent shaking, but admitted on cross-examination that the brain injuries could have been caused by a fall such as appellant claimed had occurred.

Each physician expressed the opinion that the abdominal injuries were caused by several blows from a blunt instrument, inflicted between twelve and twenty-four hours prior to death. Death resulted, according to these witnesses, from loss of blood and shock due to severe trauma to the vital organs. Both physicians were of the opinion that all of the injuries could not have resulted from a fall on the carpeted floor, nor from a fall from the bed, nor from the force inflicted by a person of smaller size than a teen-ager (thus excluding the Kerchner's three young children and Christine's younger sister who were also in the household at the

time appellant allegedly inflicted the beating). No adult other than appellant was present in the Kerchner household between the hours of 4:30 p. m. and 8:00 p. m. on March 15, 1976.

Based on these facts, the trial court adjudged appellant guilty of murder in the third degree. In so doing, the court relied heavily on our decision in *Commonwealth v. Paquette, supra,* 451 Pa. 250, 301 A.2d 837 (1973). In *Paquette,* a case which is, on the surface at least, factually similar to the instant case, we said:

"Admittedly, the Commonwealth's evidence to support its position that all of the bruising occurred during the time the child was under his [the defendant's] exclusive care was weak. This is not controlling, however, since the medical evidence, offered by the Commonwealth, clearly establishes repeated and severe blows to the infant as being the origin of the factors causing death. Such a finding is completely incompatible with the defense's theory that the injuries were either sustained by a fall from the couch to the floor or an epileptic fit while the child was in the bath. Considering the number of bruises, their severity and their positioning about the head and the face, the fact-finder was justified in rejecting the possibility of accident or self-inflicted injury . . . ."
*Id.* 451 Pa. at 255, 301 A.2d at 839 -840.

The *Paquette* court concluded, saying,

"Where, as here, an adult has sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, the evidence is sufficient to allow a jury to infer that the adult inflicted the wounds."
*Id.* 451 Pa. at 255, 301 A.2d at 840.

Close examination of the factual setting surrounding the *Paquette* decision, however, reveals that it is distinguishable from the instant case in such a way as to compel a different result here. Only when read in the context of the facts of *Paquette* can the above quoted statement be accurately

understood. As Mr. Justice Nix stated at the outset of the opinion announcing the court's decision in *Paquette* :

"When the appellant, Edmund Paquette, brought his 6½ month old stepdaughter to the emergency room of the Mercy Hospital, on January 31, 1970, she was cyanotic, blue in color, and had no respiration or heartbeat. As the child's life functions returned, bruise marks on her forehead and chin became evident. She died four days later." *Id.* 451 Pa. at 252, 301 A.2d at 838.

It is thus clear from the facts in *Paquette* that the appellant there had exclusive control of the child throughout the *entire* period of time during which the child could have suffered the injuries which ultimately caused death. Appellant in the instant case, however, had sole custody of Christine only for the three and one-half hours between 4:30 and 8:00 p. m.; whereas, according to the prosecution's evidence, the injuries which resulted in Christine's death could have been inflicted at any time within the period of time between thirty-one hours and forty-one hours prior to the autopsy which was performed at 9:00 a. m. on Monday, March 17, 1975. Thus, according to the prosecution's expert witnesses the blows resulting in the child's death could have been inflicted at any time between 3:30 p. m. on Saturday, March 15, 1975, and 1:00 a. m., Sunday, March 16, 1975.

It is true that the prosecution established that some, at least, of the facial injuries suffered by the decedent were sustained while she was in appellant's sole custody. The prosecution's own witness testified, however, that these facial injuries as well as the injuries to the decedent's brain, could have resulted from a fall as described by appellant. The prosecution's evidence fails to establish beyond a reasonable doubt, however, that the injuries to the decedent's abdomen, with their resultant damage to the internal organs, were sustained during the time she was under appellant's exclusive control. Neither of the prosecution's expert medical witnesses was able to testify as to whether or not all injuries were inflicted at the same time. In fact, there was some prosecution evidence indicating that they might have

occurred at different times within the thirty-six hour period prior to the autopsy. Furthermore, as previously noted, the prosecution's evidence failed to establish beyond a reasonable doubt that the blows to the child's abdomen were delivered within the four hour time period during which the child was under appellant's exclusive control. Although the decedent's mother testified for the prosecution that she observed no unusual marks on the child's body other than those previously described at the time the child was left in appellant's custody, she also testified that she noticed nothing abnormal other than the facial bruises, upon her return. There is thus no evidence to show that the abdominal injuries were sustained prior to the child's mother's return at 8:00 p. m. From that time (at which time the prosecution's witness testified that the child appeared to be sleeping normally) until 8:00 a. m. the following morning when the child was discovered lying lifeless on the floor beside her bed, appellant did not exercise exclusive custody over her and therefore *Paquette* is inapplicable. We cannot infer from the fact that the child sustained facial bruises and abrasions while in appellant's custody that she also sustained the fatal abdominal injuries described above. *Commonwealth v. Treftz, supra,* 465 Pa. 614, 351 A.2d 265 (1976).

As we recently stated in *Commonwealth v. Bishop,* 472 Pa. 485, 489, 372 A.2d 794, 796 (1977),

"It is beyond cavil that an accused in a criminal case is clothed with a presumption of innocence and that the burden of proof in establishing guilt rests with the Commonwealth. The quantum of proof necessary to satisfy this burden, which never shifts from the Commonwealth to the accused, is such that the fact-finder must be convinced beyond a reasonable doubt of the defendant's guilt. *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959). We have often stated that this identical burden extends to every material element of the crime charged and that if the Commonwealth fails to carry this

burden beyond a reasonable doubt *as to any one element,* the accused must be acquitted. *Commonwealth v. Young,* 456 Pa. 102, 111, 317 A.2d 258, 262 (1974); *Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *Commonwealth·v. Conklin,* 399 Pa. 512, 515, 160 A.2d 566, 568 (1960). *See also In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). (Emphasis in original.)

I would reverse the judgment of sentence and discharge the appellant.

POMEROY and O'BRIEN, JJ., join in this opinion in support of reversal.