638 A.2d 961

COMMONWEALTH of Pennsylvania, Appellee,

v.

Andrew Eric HUFFMAN, a/k/a Eric Draighton, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 22, 1992.

Decided March 11, 1994.

Reargument Denied May 5, 1994.

Bruce A. Franzel, Philadelphia, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Kathy L. Echternach, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY,[1] Justice.

The Appellant, Andrew Eric Huffman, (a/k/a Eric Draighton) was convicted by a jury of murder of the first degree in the beating death of Edward Heileman and was sentenced to death. He was also convicted of conspiracy,[2] robbery,[3] and burglary,[4] and was sentenced to prison for an aggregate, consecutive term of twenty-five to fifty years.[5] We reverse the first degree murder conviction and remand for a new trial.

The evidence as presented to the jury reveals the following. On March 13, 1989 at about 8:00 p.m., Andrew Eric Huffman conspired with Eric Grier, to burglarize Grier's place of employment, the Patterson Dump Truck Company. Grier occasionally lived at the Patterson Dump Truck Company site, in a room next to the victim, who also lived there. Grier had left a door to the office area unlocked the day of the murder. That evening, the conspirators walked together to the office area. One or both of the conspirators entered the office and beat the

1. This opinion was reassigned to this author.

2. 18 Pa.C.S. § 903.

3. 18 Pa.C.S. § 3701.

4. 18 Pa.C.S. § 3502.

5. Huffman was tried jointly with Eric Grier which decision is filed as a companion case.

victim about the head with an iron pry bar.[6] The conspirators took some telephones and a typewriter, left the Patterson Dump Truck Company site, sold the stolen items and bought drugs with the proceeds. Later that night, the conspirators returned to the Patterson Dump Truck Company site, did not enter the office area, but instead broke into the garage area, stole tools, left the site, and sold the tools. On March 14, 1989 Edward Grier turned himself in. On April 13, 1989, Appellant was arrested.

Appellant argues that the trial court's instruction on accomplice liability was improper, as a matter of law, because it advised the jury that they may find an accomplice guilty of murder in the first degree even if he did not have the specific intent to kill.[7] We agree.

Specifically, we find that the instruction in question was an outright misstatement of the law on a fundamental issue relating to culpability, and thus, deprived the appellant of a fair trial.

This Court has stated that "the function of elucidating the relevant legal principles belongs to the judge, and the failure to fulfill this function deprives the defendant of a fair trial." *Commonwealth v. Bishop*, 472 Pa. 485, 490, 372 A.2d 794, 796 (1977). The jury instruction as to accomplice and co-conspirator liability given by the trial judge was as follows:

> Thus, in order to find a Defendant guilty of murder in the first degree, you must find that the Defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the Defendant's act or the act of an

**6.** We note that evidence as to the killing itself is quite limited. The conspirators were tried jointly and, exercising their rights under the Fifth Amendment, both chose to not testify. As the portions of both conspirators' prior statements regarding the killing itself were mutually accusatory, the trial court redacted all portions of each statement relevant to the actual killing.

**7.** Appellant raises other issues related to his conviction of first degree murder as well, however, as we are reversing the conviction and remanding for a new trial on this issue, we do not find it necessary to address Appellant's other issues, or review the sufficiency of the evidence.

accomplice or co-conspirator is the legal cause of death of [the victim], and thereafter you must determine if the killing was intentional.

Trial Transcript, Jury Charge and Verdict Vol. VII, p. 30.

This charge is, quite simply, a patently erroneous statement of the law. This Court has unequivocally held that,

[t]o determine the kind of homicide of which the accomplice is guilty, it is necessary to look to *his* state of mind; the requisite mental state must be proved beyond a reasonable doubt to be one *which the accomplice harbored and cannot depend upon proof of the intent to kill only in the principal.*

*Commonwealth v. Bachert,* 499 Pa. 398, 406, 453 A.2d 931, 935 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983) (emphasis added).[8] As the Superior Court has made the point, "[v]icarious criminal liability is premised upon the existence of the element of criminal intent. . . . To aid and abet in the commission of a crime, one must possess a shared intent to commit it." *Commonwealth v. Cunningham,* 301 Pa.Super. 209, 212, 447 A.2d 615, 617 (1982) (citations omitted).

This Court's express and unambiguous language in *Bachert, supra,* seems to have gone completely unheeded by the trial judge in the instant case. The jury instruction allowed the jury to reach a first-degree murder verdict with no finding of the requisite mental state of "specific intent to kill" on the part of the accomplice/appellant. Defense counsel timely and properly objected to this erroneous instruction:

If the Court please, I have several objections and requests of the Court. The primary one is really interrelated in

---

**8.** Pennsylvania's Suggested Standard Jury Instructions make specific reference to this issue in the related co-conspirator setting as follows:

Before submitting a case to the jury the court should also determine that there are no special limitations on the co-conspirator rule that apply to the case. *See Commonwealth v. Bachert,* 271 Pa.Super. 72, 412 A.2d 580 (1979) (person cannot be convicted of first degree murder unless he shared a specific intent to kill with the active perpetrator even though he shared an intent to kidnap and rob the victim).

Pennsylvania Suggested Standard Criminal Jury Instructions, Section 8.306 C, p. 2.

Your Honor's charge with respect to accomplice liability, conspiracy, and first and second degree murder. And that is the manner in which the Court charged the jury on that indicates that if an accomplice or co-conspirator had the intent to kill, that they may still find the Defendant guilty of first-degree murder even if that Defendant did not have the intent to kill. And I suggest to the Court that clearly in order for him to find any defendant guilty of murder in the first degree, they must find that the defendant had the fully formed intention to kill. And the manner in which the Court gave that charge does not convey that to the Jury.

Jury Charge and Verdict, Volume VII, pp. 44, 45.

Further, the error is not harmless; it may well have contributed to the guilty verdict. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). This Court reiterated the basic rule in *Commonwealth v. Wortham,* 471 Pa. 243, 369 A.2d 1287 (1977), that an uncured inaccurate charge as to a fundamental issue of the law is not harmless error. As former Justice, now Chief Justice Nix pointed out, writing for the Court in *Wortham:*

We have often granted new trials on the basis of inadequate, unclear, misleading or inappropriate charges. On a prior occasion we specifically ruled that unrectified error on the charge with regard to the proper allocation of the burden of proof in criminal proceedings would not be considered harmless despite a strong Commonwealth case.

*Id.* at 248, 369 A.2d at 1290. (citations omitted).

An inaccurate jury instruction, such as the accessorial and co-conspiratorial liability instruction in the case *sub judice,* is obviously no less questionable than was the inaccurate instruction as to the burden of proof which we found was not harmless error in *Wortham.* It is clear that—to the extent which the jury relied on the contested instruction as the jury was instructed that it was obliged to do—the Commonwealth was improperly relieved of its burden of proving beyond a reasonable doubt a critical element of the crime of first degree murder, that the appellant possessed the specific intent to kill.

Under the contested instruction, the jury needed to find only that the appellant had conspired to commit or assisted in a burglary with the actual murderer in order to find him guilty. Permitting such a faulty verdict to stand would be to tolerate a miscarriage of justice. The Commonwealth must prove all of the elements of a crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In any event, we need not—and should not—guess at what the jury may or may not have concluded in its deliberations. As this Court has stated:

> [W]e may not speculate as to the basis of the jury's verdict. Strong as the Commonwealth's case was, the jury was nonetheless free to reject it in its entirety and instead accept the ... defense which [the defendant] tendered; it is conceivable that, absent the error in the charge, they might have done so.

*Commonwealth v. Ewell*, 456 Pa. 589, 595, 319 A.2d 153, 157 (1974). Even more strongly, this Court has emphasized:

> On prior occasions we have refused to ignore an incorrect, misleading, or incomplete charge on a matter as fundamental as the burden of proof in a criminal case, even where "the evidence of guilt piles as high as Mt. Everest on Matterhorn, even if the District Attorney conscientiously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar...."

*Commonwealth v. Bishop*, 472 Pa. 485, 491, 372 A.2d 794, 797 (1977), (quoting *Commonwealth v. Edwards*, 394 Pa. 335, 338, 147 A.2d 313, 315 (1958) and *Commonwealth v. Conklin*, 399 Pa. 512, 515, 160 A.2d 566 (1960)).

The error in this case cannot be considered harmless. Unless the appellant possessed the specific intent to kill, he could not be found guilty of murder in the first degree.[9] Since

---

9. We are perplexed by the dissent offered by our learned colleague, Mr. Justice Papadakos. The cases cited therein are factually distinguishable from the case *sub judice*. Most of the cases cited affirmed convictions of felony murder or manslaughter, and do not address the element of specific intent which is required for a conviction of first degree murder.

the jury was not properly instructed on this critical point of law, appellant's conviction of first degree murder cannot be permitted to stand. Accordingly, for the reasons set forth, we reverse Appellant's conviction of first degree murder and remand for a new trial.[10]

LARSEN and McDERMOTT, JJ., did not participate in the decision of this case.

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I must dissent vigorously from the majority's interpretation of the trial judge's jury instruction. There is nothing in that language to suggest that it is in conflict with the holding in *Commonwealth v. Bachert*, 499 Pa. 398, 406, 453 A.2d 931, 935 (1982).

The fallacy in the majority's argument lies in its easy conclusion that the "jury instruction allowed the jury to reach a first-degree murder verdict with no finding of the requisite mental state of 'specific intent to kill' on the part of the accomplice/appellant." (Maj. opinion, p. 963). Standing alone, the statement is correct. Its application is easy *when the identities of the actual killer and accomplice are known.* In

*See Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688 (1978); *Commonwealth v. Cox*, 466 Pa. 582, 353 A.2d 844 (1976); *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973); *Commonwealth v. Strong* 484 Pa. 303, 399 A.2d 88 (1979); *Commonwealth v. Townes*, 460 Pa. 709, 334 A.2d 599 (1975). In *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75 (1937), the judge's instruction to the jury clearly explained that the defendant, who had gone on a crime spree with another man, could only be found guilty of first degree murder as an accomplice/co-conspirator if he was found to have fully formed the specific intent to kill.

10. We note that Pa.R.A.P. 702(b) vests jurisdiction in the Supreme Court over "appeals relating to sentences for lesser offenses imposed on a defendant as a result of the same criminal episode or transaction and tried with the capital offense." Appellant asserts no arguments challenging his convictions of robbery, burglary, and criminal conspiracy. Accordingly, our reversal and order remanding for a new trial is limited to the first degree murder conviction and does not affect Appellant's convictions of robbery, burglary, and criminal conspiracy.

that circumstance, it is indeed incumbent upon the prosecution to prove the mens rea of each actor.

Here, of course, that identification was absent. We do not know which actor struck the mortal blow. What we do know, however, is that an intentional killing did take place and that both actors were present at the scene in perpetration of a crime. It must follow logically that at least one of them did it and that one had to be the accomplice of the other.

In this context, the problem becomes one of identification. The problem is not new to our law because cases hold clearly that under such circumstances the Commonwealth *need not identify the actual perpetrators* even in *specific intent crimes.* Both could be determined by a jury to have a shared intent to commit the crime.

These same circumstances were addressed by this Court in several previous cases including, especially *Commonwealth v. Bradley,* 481 Pa. 223, 392 A.2d 688 (1978), and *Commonwealth v. Cox,* 466 Pa. 582, 353 A.2d 844 (1976). There the challenges of the appellants were to the sufficiency of the evidence as to who fired the fatal shots and, therefore, who could be convicted. Employing the doctrine of shared intent, we concluded that in order to convict, the prosecution had to prove that the Appellants were accomplices or co-conspirators. As to the issue of the identity of the killer, we held further that under "our law it is now axiomatic that the actor and his accomplice share equal responsibility for the act. . . . Thus it is not incumbent upon the prosecutor to identify their respective roles." *Bradley,* 481 Pa. at 228, 392 A.2d at 690. Shared intent, moreover, can be proven by circumstantial evidence. *Cox,* 466 Pa. at 586, 353 A.2d at 846, and cases cited.

Where the actor similarly could not be singled out by the evidence, other cases have used synonymous language. *Commonwealth v. Rife,* 454 Pa. 506, 511, 312 A.2d 406, 409 (1973) ("act of one is act of all") citing to the older language of *Commonwealth v. Strantz,* 328 Pa. 33, 40, 195 A. 75, 79 (1937); *Commonwealth v. Strong,* 484 Pa. 303, 399 A.2d 88 (1979) ("group as a unit"); also see, *Commonwealth v. Townes,* 460

Pa. 709, 334 A.2d 599 (1975). In *United States v. Bryan,* 483 F.2d 88 (3rd Cir.1973), it was held that it is not a pre-requisite to the conviction of an aider or abettor that the principal be convicted or even identified.

For the majority to disregard this solution utterly is to overlook critical precedent. More importantly, nevertheless, is the fact that a tragedy is building out of this case against the people of this Commonwealth. A victim was intentionally bludgeoned to death; two actors were at the scene; unless we are prepared to believe in the Tooth Fairy, we know that one of them did it. Yet the majority will remand for a finding that any jury will soon discover is impossible to make on the majority's terms. Without the legal theory expressed above, a jury will always be stuck with the broken record of how to attribute specific intent without identifying the particular roles of the perpetrators. So the killers will walk away from first degree murder and the death penalty. So the people will have been deprived of a fair trial.

The trial judge instructed the jury to determine the facts. On the evidence presented, the jury chose to believe that both actors had the requisite mental state for murder in the first degree. At that point, it was proper for the jury to decide that they were both guilty as charged even though specific roles could not be delineated under the facts.