681 A.2d 188

**COMMONWEALTH of Pennsylvania**

**v.**

**Andrew Eric HUFFMAN a/k/a Eric Draighton, Appellant.**

**COMMONWEALTH of Pennsylvania**

**v.**

**Eric J. GRIER, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1995.

Filed July 18, 1996.

Reargument Denied Sept. 17, 1996.

68

Bruce A. Franzel, Philadelphia, for Andrew E. Huffman.

Jack L. Gruenstein, Philadelphia, for Eric J. Grier.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

BECK, Judge.

The issue is whether in a double jeopardy pretrial order the trial court correctly determined that upon retrial the Commonwealth is permitted to seek a conviction for first degree murder.[1] We affirm.

In their first trial, appellants were convicted of first degree murder and sentenced to death. The Pennsylvania Supreme Court reversed the murder convictions and remanded for a new trial because the trial court's instruction regarding ac-

---

1. Appellants were tried together before a jury. They filed separate appeals but due to the common issues presented, we have consolidated the appeals for disposition.

complice and co-conspirator liability was flawed.[2] The appellants concede that they may be retried for homicide but claim they cannot be retried for first degree murder. They argue that double jeopardy principles bar retrial for first degree murder because in the first trial the Commonwealth failed to prove the specific intent to kill. Appellants insist that under double jeopardy principles, the Commonwealth cannot have a second opportunity to prove specific intent to kill.

In reviewing the trial court's decision, we focus on the evidence admitted in the first trial as it relates to first degree murder[3]. If the Commonwealth failed to introduce sufficient evidence for the fact finder to conclude that appellants were guilty of first degree murder, then double jeopardy principles preclude a second trial on that charge. However, if the Commonwealth did present sufficient evidence at the first trial, then the bar of double jeopardy does not apply.

The facts of the case, as summarized by the supreme court, are as follows:

On March 13, 1989 at about 8:00 p.m., Andrew Eric Huffman conspired with Eric Grier, to burglarize Grier's place of employment, the Patterson Dump Truck Company. Grier occasionally lived at the Patterson Dump Truck Company site, in a room next to the victim, who also lived there. Grier had left a door to the office area unlocked the day of the murder. That evening, the conspirators walked together to the office area. One or both of the conspirators entered the office and beat the victim about the head with an iron pry bar.* The conspirators took some telephones and a typewriter, left the Patterson Dump Truck Company site, sold the stolen items and bought drugs with the proceeds. Later that night, they returned to the Patterson Dump Truck Company site, did not enter the office area, but instead broke into the garage area, stole tools, left the site, and sold the tools. On March 14, 1989 Edward [sic]

---

2. The supreme court affirmed the judgments of sentence as to conspiracy, robbery and burglary.

3. The supreme court explicitly declined to address appellants' sufficiency claims on appeal.

Grier turned himself in. On April 13, 1989, Appellant [Huffman] was arrested.

\* \* \* \* \* \*

\* We note that evidence as to the killing itself is quite limited. The conspirators were tried jointly and, exercising their rights under the fifth amendment, both chose not to testify. As the portions of both conspirators' prior statements regarding the killing itself were mutually accusatory, the trial court redacted all portions of each statement relevant to the actual killing.

*Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961, 961–62 (1994) (*"Huffman I "*).

At trial, the judge gave the following charge:

Thus, in order to find a Defendant guilty of murder in the first degree, you must find that the Defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the Defendant's act or the act of an accomplice or co-conspirator is the legal cause of death of [the victim], and thereafter you must determine if the killing was intentional.

*Id.* at 198–99, 638 A.2d at 962.

Our supreme court found this instruction "patently erroneous" because it allowed the jury to use the specific intent of the principle to convict the accomplice or co-conspirator of first degree murder. Relying on *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983), the court held:

[T]he requisite mental state must be proved beyond a reasonable doubt to be one *which the accomplice harbored and cannot depend upon proof of the intent to kill only in the principle.*

*Huffman, supra* at 198, 638 A.2d at 962 (emphasis in original) (citations omitted).

In contrast to the defense, the Commonwealth submits that sufficient evidence was presented at the first trial to establish that both appellants possessed the specific intent to kill the victim and, as a result, retrial on first degree murder is appropriate for both appellants. In support of its argument

that the evidence was sufficient to establish intent, the Commonwealth directs our attention to *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367, *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991).

In *Chester*, two men were tried for their participation in the death of another. The men, in an "aggressive and quarrelsome state," were last seen with the victim in the victim's car. The victim was beaten severely about the head and then slashed multiple times in the neck. His body was found near his car, which had been set on fire. The evidence at trial revealed that shortly after the attack on the victim, appellants arrived at their friend's apartment "agitated" and with blood stains on their clothes. The friend assisted them in removing and concealing their clothing. Other witnesses testified to incriminatory statements made by the men that "reflected their complicity in the murder." *Id.* at 588, 587 A.2d at 1372. Our supreme court found this evidence sufficient to sustain the guilty verdicts for first degree murder. The Commonwealth asserts that *Chester* controls this case.

It is axiomatic that a person can be convicted of first degree murder even if he or she did not commit the act that directly causes the death of the victim. *See* 18 Pa.C.S.A. § 306; *Commonwealth v. Smith*, 480 Pa. 524, 391 A.2d 1009, (1978). The issue in this case however, goes beyond that simple principle of law. In order for a conviction of first degree murder to be sustained, there must be evidence from which a jury can infer that the defendant harbored the specific intent to kill. As is clear from *Bachert* and *Huffman I*, the Commonwealth must present sufficient evidence from which the jury can infer that each appellant intended to cause the death of the victim. Each participant's specific intent to kill must be established.

In order to assess whether at the first trial the Commonwealth presented sufficient evidence from which a jury could infer specific intent to kill, we must do a careful analysis of the evidence presented. Jeffrey Patterson, who owned the Patterson Dump Truck Company (the "Patterson Company") with

his brother, testified that he was at his place of business on the evening of the crime and saw Grier there with another man. He told Grier that he was there to lock the facility, but Grier assured him that it already was locked and so Patterson left without checking the doors himself.

Elaine Moon testified that she saw appellants together on the street shortly before the murder and asked if they had any drugs. They instructed her to wait for them on the corner and she did so. Later, they returned carrying tools and other items. Moon then accompanied the men to a house where they attempted to sell some of the stolen goods. However, the person who was to pay them for the stolen items was not available so they left the items at the house.

An employee of a local variety store testified that he observed Huffman, whom he knew, and Grier enter his store on the night of the crime. Huffman sold the employee an electric planer that had been stolen from the Patterson Company.

Derrick Brazelton testified that he was present at a crack house on the morning after the crime and that he observed appellants there. Brazelton said the men left the house and returned later with drugs. Soon, homicide detectives arrived outside the house and took Grier's girlfriend to headquarters for questioning. Brazelton watched this from a window with Grier and asked Grier why the police wanted to talk to his girlfriend. Grier responded that he had "gotten a body." When Brazelton told Grier he must be kidding, Grier replied that he was "serious."

Juanita Pringle, the mother of Brazelton's children, testified that she also was present at the crack house with Grier and Huffman the morning after the crime. She said appellants left the house together to pick up money they were owed for stolen goods. They returned later with cash and crack and Pringle got high with them. Pringle testified that Huffman too said "something about a body" while speaking to his girlfriend that morning. Pringle further testified that Huffman told her that he was at the Patterson Company twice the

night before and that both times he stole items that were sold for drug money.

Later that same day, Grier turned himself in to police and, ultimately, a warrant was issued for Huffman's arrest. Pringle testified that after Grier went to police, Huffman changed his clothes and told her that he intended to go into hiding. Huffman did, in fact, elude police for over a week before he was apprehended.

Both appellants gave statements to police which were admitted into evidence. Grier claimed that he went to the Patterson Company to steal items so that he could sell them for money to buy drugs. Huffman made two statements. In the first, he claimed that he never entered the Patterson Company office on the night of the crime, had nothing to do with the murder and left town that evening to visit a sick relative. In the second, he admitted that he went inside the Patterson Company office with Grier but did not steal anything. As noted by the supreme court, the details of the killing were redacted from each appellant's statements since they were "mutually accusatory."

Extensive testimony by the medical examiner and police personnel revealed that the victim, who was found in the company office, was brutally beaten about the head with a metal pry bar that was recovered at the scene; his skull was shattered from the intensity of the blows and his blood was spattered on the walls. Numerous items of equipment were taken from the office. The phones were pulled from the walls and an axe was wedged under the office door which prevented the victim from escaping.

Considering our standard of review, that is, viewing all of the evidence in the light most favorable to the Commonwealth, and in light of *Chester*, we conclude that the evidence presented at the first trial was sufficient to establish the specific intent to kill on the part of both appellants. The nature of the decedent's wounds, i.e., repeated blows to the head with a metal bar which crushed the skull, allow an inference of an intent to kill. *See Chester, supra.* Appellants, by their own

statements and through the testimony of other witnesses, were present at the time of the murder. Despite the fact that no one testified to seeing the men beat the victim to death, the conduct of appellants before and after the crime, their statements to police and others and the manner of the victim's death combine to establish evidence from which a jury could conclude the specific intent to kill. We therefore find that the evidence presented by the Commonwealth at the first trial was sufficient for the fact finder to conclude both appellants were guilty of first degree murder. Therefore, no double jeopardy problems arise on retrial on the charge of first degree murder. The Commonwealth is not being afforded a second opportunity to prove specific intent to kill.

Order affirmed; matter remanded for retrial.