J-S14024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYROME FULLER | : | |
| | : | No. 3279 EDA 2016 |
| Appellant | : | |

Appeal from the PCRA Order Entered October 14, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0605971-2003

BEFORE: OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 22, 2018**

Appellant Dyrome Fuller appeals the order of the trial court dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"),[1] in which he claimed that his trial counsel was ineffective for failing to object to jury instructions. We affirm.

Fuller was tried by jury in 2006,[2] with co-defendants Sharrod Rice and Robert Richardson, for the first-degree murder of Omain Gullette, and related offenses, including conspiracy to commit first-degree murder. At trial, the following facts were established, as recounted by the trial court:

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-46.

[2] An initial trial in 2005 resulted in a hung jury.

On the afternoon of June 29, 2002, three of the Commonwealth witnesses in this case, Ronald James, Gregory Allen, and Hakim Lane, were involved in a confrontation on a residential street in Southwest Philadelphia that allegedly centered on drug trafficking. There were gunshots fired at that time, but no one was hit or injured. After this incident, Hakim Lane summoned some of his friends from North Philadelphia to retaliate against Ronald James.

These "Friends" were [Fuller] and his two co-defendants, and they arrived on the block shortly after the first altercation had ended. [Fuller] and one of his co-defendants were armed with automatic handguns, and the second co-defendant came to the scene with an assault rifle. [Fuller] was in possession of a "nine-millimeter" handgun. As they entered the block after turning the corner, all three of them began firing in an apparent attempt to shoot Ronald James. When the shooting commenced, there were a number of adults and children who were sitting, walking, or playing on the block.

The Commonwealth offered testimony that there were close to forty shots fired that afternoon from the three weapons that [Fuller] and co-defendants possessed. Car windows were shattered, porches were struck, and two people were wounded. The decedent, Omain Gullette, was fatally wounded as he attempted to run away from the gunfire. Another one of the unfortunate bystanders that afternoon, Akeem Johnson, was severely injured when he suffered gunshot wounds to one of his legs as he stepped off his porch to go to the grocery store.

Eyewitnesses were called by the Commonwealth, and they testified that they saw the [Fuller] and co-defendants shooting up and down the street on the afternoon in question. In addition, there was testimonial evidence that detailed the defendants' relationship to each other, the reason they were on the block that afternoon, and the earlier conflicts that prompted them to arrive there with the intent to kill or seriously injure Mr. James. None of the three defendants offered any substantive evidence to rebut the account of the incident that was presented to the jury by the Commonwealth witnesses, though they did challenge the credibility of the eyewitnesses to this tragic event.

*Commonwealth v. Fuller*, No. 2002 EDA 2006, unpublished memorandum at 2-3 (Pa.Super. filed June 17, 2009) (quoting Trial Court Opinion, filed Jan. 29, 2008, at 1-4).

Following closing arguments, the judge charged the jury. Before describing the elements of each crime with which the co-defendants were charged, the judge explained there is a difference between principal and accomplice liability. *See* N.T., 2/1/06, at 57. The judge stated, "When I say a principal, they are charged individually as being the actual person who fired the shot that caused the death of Omain Gullette. Each of them is being charged with being the person that actually did the act. That's one theory of liability." *Id.* Before defining accomplice liability, the judge clarified, "The mere fact that I state that a defendant has an alleged accomplice does not mean that he is an accomplice," and emphasized that the jury was tasked with determining whether any of the defendants were guilty under accomplice liability. *Id.* at 58. The court also specified that the Commonwealth alleged that Fuller, Rice, and Richardson were each accomplices of each other. *Id.* at 59.

The court then explained that "[a]ccomplice liability is a way that a defendant can be held responsible for a crime without actually personally committing the crime himself," *id.*, and qualified that "[a] defendant does not become an accomplice merely by being present at the scene, or knowing about a crime." *Id.* at 60. The court gave the following definition of an accomplice:

He is an accomplice if one, **with the intent of promotion or facilitating commission of the crime**, so he promotes it or he makes it easier to commit, those two or more with the intent of promotion or facilitating commission of the crime he solicits, commands, encourages or requests the other person to commit it, meaning the crime, or aids, agrees to aid or attempts to aid the other person in planning or committing it.

*Id.* (emphasis added). Shortly thereafter, the court clarified that part of the instruction:

He is an accomplice if one, **with the intent of promotion or facilitating commission of the crime** he solicits, commands, encourages or requests the other person to commit it or aids, agrees to aid or attempts to aid the other person in planning or committing it.

*Id.* at 61 (emphasis added).

The court defined first-degree murder[3] in relation to each of the co-defendants. With regard to Fuller, the court stated:

First Degree Murder, Dyrome Fuller. First degree murder is a murder in which the killer has the specific intent to kill. You may find the defendant guilty of first degree murder if you are satisfied that the following three elements have been proven beyond a reasonable doubt. First, that Omain Gullette is dead. Second, that defendant Dyrome Fuller or his alleged accomplice Robert Richardson or Sherrod Rice caused Omain Gullette's death, and third, that defendant **Dyrome Fuller or his alleged accomplice, Robert Richardson or Sherrod Rice did so, that is, caused Omain Gullette's death, with the specific intent to kill and with malice.**

---

[3] Fuller and his two co-defendants were charged with both first- and third-degree murder. The court prefaced the murder instructions by saying "There is a special requirement in addition to malice that is required when it comes to first degree murder and that involves the requirement that the Commonwealth prove that a defendant or his alleged accomplice acted with the specific intent to kill." N.T. at 63.

\* \* \*

**When deciding whether the defendant Dyrome Fuller or his alleged accomplice Robert Richardson or Sherrod Rice had the specific intent to kill**, you should consider all of the evidence regarding their respective words and conduct and the attending circumstances that may show their respective state of mind. **If you believe that defendant Dyrome Fuller or his alleged accomplice Robert Richardson or Sherrod Rice intentionally used a deadly weapon on a vital part of Omain Gullette's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant Dyrome Fuller or his alleged accomplice Robert Richardson or Sherrod Rice had the specific intent to kill.**

*Id.* at 81-83 (emphasis added).

During deliberations, the jury asked the judge to explain accomplice liability. The court's response largely echoed its earlier instructions on accomplice liability, including that an accomplice must have the intent of facilitating the commission of the crime charged. *See id.* at 140-44.

The jury found Fuller guilty of first-degree murder, criminal conspiracy to commit first-degree murder, carrying firearms on public streets or public property in Philadelphia, possessing instruments of crime, aggravated assault, and recklessly endangering another person.[4] The court sentenced him to serve a mandatory sentence of life imprisonment.[5] Fuller appealed, challenging the sufficiency of the evidence presented against him. We affirmed his judgment

---

[4] 18 Pa.C.S. §§ 2502, 903, 6108, 907, 2702, and 2705, respectively.

[5] The court sentenced Fuller to lesser sentences of consecutive periods of incarceration for the non-murder offenses.

of sentence in 2009, and the Pennsylvania Supreme Court denied his petition for allowance of appeal in 2011.[6]

Fuller filed a timely PCRA petition in August 2012. The PCRA court appointed counsel to represent him, and counsel filed an Amended PCRA Petition in June 2015.[7] After filing notice of its intent to dismiss Fuller's petition, pursuant to Pa.R.A.P. 907, and considering Fuller's response, the PCRA court dismissed Fuller's petition in October 2016.

Fuller appealed the dismissal of his PCRA petition, and presents a single issue for our review:

> Did the PCRA court err when it denied [Fuller]'s Amended PCRA petition that alleged trial counsel's ineffectiveness for failing to object to an incorrect jury instruction on first degree murder under the theory of accomplice liability which informed the jury that [Fuller] did not need to have the specific intent to kill?

Fuller's Br. at 3.

"[I]n reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." ***Commonwealth v. Andrews***, 158 A.3d 1260, 1262-63 (Pa.Super. 2017). A PCRA petitioner will only prevail on a claim that trial counsel was ineffective through pleading and proving each of the following: "(1) the underlying legal

---

[6] Fuller's right to file a petition for allowance of appeal to the Supreme Court was reinstated *nunc pro tunc* following a PCRA petition.

[7] The trial court gave no explanation for the delay in the PCRA proceedings, and none appears in the record.

claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." **Commonwealth v. Grove**, 170 A.3d 1127, 1138 (Pa.Super. 2017).

Fuller argues that his trial counsel was ineffective "for failing to object to the court's confusing and erroneous jury instructions regarding first degree murder as it relates to specific intent and accomplice liability." Fuller's Br. at 15-16. Fuller contends that the court's instruction that the jury could find Fuller guilty if either he **or** his accomplice had the specific intent to commit murder was erroneous. Fuller argues that the instruction given by the trial court was akin to that given in **Commonwealth v. Huffman**, 638 A.2d 961 (Pa. 1994), *overruling recognized by* **Commonwealth v. Maisonet**, 31 A.3d 689, 694 n.2 (Pa. 2011), which was reversible error. Although Fuller acknowledges that the trial court in his case also provided general instructions on accomplice liability, he argues that the accomplice instructions did not cure the erroneous murder instructions, but instead "the jury was left with glaringly inconsistent instructions." Fuller's Br. at 18. Fuller also argues that his trial counsel lacked a reasonable basis for failing to object to the instruction, and that Fuller was prejudiced by counsel's failure to object.

Here, although the first-degree murder instructions given by the trial court were misleading, Fuller is not entitled to relief because he cannot show prejudice. The instructions were misleading and confusing because the trial

court gave conflicting instructions about specific intent to kill. On the one hand, the court repeatedly used language in the first-degree murder instruction that incorrectly stated that the jury need only find that either Fuller **or** his accomplice, Robert Richardson or Sherrod Rice, had the specific intent to kill. This was not correct. ***See Commonwealth v. Speight***, 854 A.2d 450, 460 (Pa. 2004) (holding instruction on first-degree murder was misleading as to whether jury needed to find that defendant, as accomplice, had specific intent). On the other hand, the court told the jury several times that it could only find "a defendant" guilty as an accomplice if he acted "with the intent of promotion or facilitating commission of the crime." Although this was a correct instruction, because the court gave two conflicting instructions, only one of which was correct, we cannot know which one the jury followed.

Nevertheless, the PCRA court properly denied relief because Fuller failed to establish prejudice. Because of the strong evidence that Fuller himself possessed the specific intent to kill, we cannot say that, if trial counsel had objected and the trial court had instructed the jury properly, there is a reasonable probability the jury would have reached a different result. The Commonwealth's witnesses testified that "they saw the defendant and co-defendants shooting up and down the street," and "detailed the defendants' relationship to each other, the reason they were on the block that afternoon, and the earlier conflicts that prompted them to arrive there with the intent to kill or seriously injure Mr. James." ***Fuller***, No. 2002 EDA 2006, unpublished memorandum at 2-3. Furthermore, that same testimony supports the

conspiracy conviction, such that Fuller was properly subject to co-conspirator liability in any event. Accordingly, his ineffectiveness claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/18