

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2005

# Laird v. Horn

Precedential or Non-Precedential: Precedential

Docket No. 01-9012

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Laird v. Horn" (2005). *2005 Decisions.* Paper 768.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/768

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-9012
_____

RICHARD LAIRD

v.

MARTIN HORN, COMMISSIONER, PENNSYLVANIA
DEPARTMENT
OF CORRECTIONS; THE DISTRICT ATTORNEY OF
BUCKS COUNTY;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA


MARTIN HORN, Commissioner, Pennsylvania
Department
of Corrections; *GREGORY WHITE, Superintendent
of
the State Correctional Institution at Pittsburgh;
*JOSEPH MAZURKIEWICZ, Superintendent of the
State
Correctional Institution at Rockview,
Appellants
*(Pursuant to Rule 12(a), F.R.A.P.)

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 99-cv-2311)
District Judge: Honorable Jan DuBois
_____

Argued September 28, 2004


Before: ROTH, MCKEE AND BARRY Circuit Judges.

(Filed July 19, 2005)

Diane E. Gibbons
Stephen B. Harris (argued)
Michelle A. Henry
Office of District Attorney
Doylestown, PA 18901

    Attorneys for Appellants

Billy H. Nolas (argued)
David W. Wycoff
Defender Association of Philadelphia
Federal Capital Habeas Corpus Unit
Philadelphia, PA 19106


    Attorneys for Appellee

2

OPINION OF THE COURT

_____

McKEE, Circuit Judge:

The Commonwealth appeals the order of the district court overturning the defendant's death sentence and granting a new trial on his conviction for first-degree murder. As explained in its extremely thorough, comprehensive, and well-reasoned opinion, the district court held that the state trial court erred in instructing the jury on accomplice liability during the guilt phase. *See Laird v. Horn*, 159 F. Supp. 2d 58, 80-85 (E.D. Pa. 2001). For the reasons that follow, we will affirm.[1]

_____

[1] The district court also held that: the instructions during the penalty phase violated the holding in *Mills v. Maryland*, 486 U.S. 367 (1988), defense counsel was ineffective during the sentencing phase, and that Laird was denied due process of law during the penalty phase when he was forced to appear before the jury in shackles. Finally, the court held that Laird was also entitled to habeas relief because the prosecutor improperly commented on Laird's failure to testify in his own behalf during the penalty phase. However, since we affirm the district court's grant of habeas relief based upon the defective accomplice liability charge during the guilt phase, we need not reach the other issues raised in this appeal.

# I. Factual Background.[2]

Laird and co-defendant, Frank Chester, met the victim, Anthony Milano, in a bar in Bristol Township, Pennsylvania, and all three men left in Milano's car shortly after the bar closed.

Milano's bloodied body was discovered in a wooded area the next evening. His skull had been fractured by a blunt instrument, and his throat and head had numerous lacerations. Some of the wounds had been inflicted with such force, and were sufficiently deep, that they resulted in severing two of Milano's vertebrae. His neck had been lacerated with such force that he was almost decapitated.

Laird and Chester were jointly tried for Milano's murder. During their trial, both defendants took the witness stand and admitted being present when Milano was killed. However, they each denied intending to kill Milano and insisted that the other had inflicted the fatal wounds. The jury convicted both Laird and Chester of murder in the first, second and third degrees as well as kidnaping, aggravated assault, unlawful restraint, false imprisonment, conspiracy, and possession of an instrument of

---

[2] For a more comprehensive statement of the factual background of this appeal see *Laird*, 159 F. Supp. 2d at 67, and *Commonwealth v. Chester*, 587 A.2d 1367, 1371-72 (Pa. 1991).

crime.[3] At the conclusion of the ensuing penalty phase, the jury sentenced both Laird and Chester to death, and the Pennsylvania Supreme Court subsequently affirmed both convictions in a single opinion. *Commonwealth v. Chester,* 587 A.2d 1367, 1371-72 (Pa. 1991) ("*Chester I*"). Thereafter, Laird filed a petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). That petition was denied, and the Pennsylvania Supreme Court also affirmed that decision. *Commonwealth v. Laird*, 726 A.2d 346 (Pa. 1999) ("*Laird I*"). Laird then filed the instant habeas petition in district court pursuant to 28 U.S.C. § 2254. As we noted at the outset, the district court granted relief, and this appeal followed.

## II. State Court Decisions

In deciding the consolidated direct appeal, the Pennsylvania Supreme Court was careful to distinguish between "Chester's" allegations, "Laird's" allegations, and issues raised by both Laird and Chester ("appellants"). *See generally, Chester I*, 587 A.2d at 1373, 1375, 1376, 1377, 1381, and 1382. The Court prefaced its discussion of the trial court's instruction on accomplice liability by stating: *"Chester's* next allegation relates to the jury instructions on accomplice liability. *Appellant* submits that counsel was ineffective for failing to object to the trial court's failure to instruct the jury to find specific intent as

---

[3] Under Pennsylvania law, first-degree murder requires the specific intent to kill, second-degree murder is a killing that occurs during the course of a felony, and "all other kinds of murder" constitute third-degree murder. 18 Pa. C.S.A. § 2502.

5

a prerequisite for accomplice liability." 587 A.2d at 1384 (emphasis added). The Court rejected the argument, quoting the challenged jury instruction as follows:

> A person is guilty of a particular crime if he is an accomplice of another person who commits that crime. A defendant does not become an accomplice merely by being present at the same scene or knowing about a crime. *He is an accomplice,* however, *if with the intent of promoting or facilitating commission of a crime he solicits, or commands or encourages or requests the other person to commit it or if he aids, agrees to aid or attempts to aid the other person in planning the crime or committing the crime. However, a defendant is not an accomplice* under this concept that I'm explaining to you *if before the other person commits the crime he stops his own efforts to promote or facilitate the commission of the crime.* You may find the defendant guilty of a particular crime on the theory that he was an accomplice so long as you are satisfied beyond a reasonable doubt that the crime was committed and the defendant was an accomplice of the person who committed it. All right. That is the accomplice theory of liability.

*Id*. The Court concluded that the instruction mirrored Pennsylvania's statute on accomplice liability and held that it

6

was not erroneous.  In reaching that conclusion, the Court noted that it was rejecting "Chester's . . . allegation[]" challenging the instruction.  The Court thus realized that Chester was challenging the jury instruction on direct appeal, not Laird.

Nevertheless, when it thereafter affirmed the denial of Laird's PCRA petition and the challenge to the instruction he raised there, the state supreme court stated:

> This issue was presented on direct appeal as an allegation of ineffectiveness of trial counsel for failure to object to the charge as given.  The allegation of error was denied as the charge was found to properly set forth the elements of accomplice liability. *Laird,* 587 A.2d at 1384.  Petitioner attempts to relitigate this claim by attacking appellate counsel's ineffectiveness for failing to prevail on this claim in the direct appeal.  Post-conviction relief cannot be obtained on a previously litigated claim merely by arguing appellate counsel's ineffectiveness and presenting new theories of relief.

*Laird I*, 726 A.2d at 354.  However, as we have just explained, that claim was only raised by the co-defendant, Chester, on direct appeal.  Thus, in resolving Laird's habeas petition, the district court correctly concluded that Laird's claim had not been adjudicated on the merits by the state courts.

7

### III. District Court Decision

In the district court, Laird argued that the instruction on accomplice liability denied him due process of law because it relieved the prosecution of its burden of proving each element of first degree murder beyond a reasonable doubt. The Commonwealth argued that Laird's due process claim was procedurally defaulted because he had not raised it on direct appeal. The district court rejected the Commonwealth's position and held that the "relaxed waiver rule" in effect at the time of Laird's direct appeal precluded finding a procedural default. 159 F. Supp. 2d at 81. Accordingly, the district court held that the deferential standard established by the Antiterrorism and Effective Death Penalty Act ("AEDPA") did not apply because the state courts had refused to review the claim on the merits. The district court then analyzed the accomplice liability charge under the pre-AEDPA standard and held that it was "reasonably likely to lead the jury to conclude that it need only find that petitioner solicited, commanded, encouraged or requested the facilitation of *a crime* and the crime of first-degree murder was committed – by either defendant." *Id*. at 84. The court granted conditional relief after concluding that the error was not harmless.

### III. Discussion[4]

If a claim has been adjudicated on the merits in state court, federal habeas relief can not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Here, the Commonwealth argues that the district court improperly concluded that Laird's challenge to the trial court's accomplice liability charge was not subject to the deferential standard of AEDPA because the state supreme court never adjudicated it on the merits.

Thus, before we address the merits of the challenge to the accomplice liability instruction, we must determine whether the district court correctly identified the applicable standard of review. *Holloway v. Horn*, 355 F.3d 707, 718 (3d Cir. 2004).

The Commonwealth argues that the Pennsylvania Supreme Court's adjudication of Chester's claim that his trial counsel was ineffective for not objecting to the instruction is

---

[4] The district court had jurisdiction pursuant to 28 U.S.C. § 2254, and we have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Our review of the district court's legal conclusions is plenary. *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001).

9

tantamount to a decision on the merits of Laird's due process challenge to the instruction that must be afforded deference under AEDPA. The Commonwealth has not offered any authority to support the proposition that a ruling on a defendant's ineffectiveness of counsel claim constitutes a decision on the merits of a due process claim subsequently raised by the co-defendant on collateral review, and we can find no such authority. Moreover, the ephemeral nature of any such agency is particularly problematic here because Laird and Chester each attempted to blame the other for Milano's murder during their joint trial.[5]

The Commonwealth's position is even more untenable given the state supreme court's analysis of Chester's PCRA claim. In affirming the denial of Chester's PCRA petition, the Court also concluded that the challenge to the accomplice liability instruction had previously been litigated. However, it then noted that the claim had arguable merit as the charge was "facially inconsistent" with the court's decision in *Commonwealth v. Huffman*, 638 A.2d 961, 962 (Pa. 1994). The Court stated:

_____

[5] Furthermore, we note that in his PCRA appeal, Laird cited our opinion in *Smith v. Horn*, 120 F.3d 400 (3d Cir. 1997), which was issued after the Pennsylvania Supreme Court's decision on Chester's claim on direct appeal. In refusing to review Laird's PCRA claim, the Pennsylvania Supreme Court never addressed *Smith* which, as discussed below, is controlling precedent for this habeas claim.

10

Although this claim was finally litigated for purposes of PCRA review, *we must acknowledge the arguable merit of [Chester's] alleguation*. The charge on accomplice liability as given at petitioner's trial appears facially inconsistent with this court's holding in *Commonwealth v. Huffman,* 536 Pa. 196, 638 A.2d 961 (1994). A general accomplice charge, while legally correct on the law of accomplice liability, when given in conjunction with a charge of first degree murder, must clarify for the jury that the specific intent to kill necessary for a conviction of first degree murder must be found present in both the actual killer and the accomplice. *The rationale used by this court on direct appeal in resolving this issue fails to acknowledge this distinction.*

*Chester II*, 733 A.2d at 1253 n.12 (emphasis added). The Court thus admitted that its reasoning on direct appeal in *Chester I* failed to acknowledge that an accomplice instruction involving a charge of first-degree murder must inform the jury of the need to find that the accomplice shared the specific intent to kill the victim.[6]

Nevertheless, the Court held that Chester had not been prejudiced by the charge because he had been convicted of

---

[6] Given that Court's recognition of the obvious problems with this charge, the Commonwealth's rather obstinate defense of the instruction is perplexing.

11

conspiracy to commit first-degree murder, and the jury therefore must have found the requisite intent beyond a reasonable doubt. However, as we note below in discussing our recent decision in *Bronshtein v. Horn*, that reasoning is flawed. Laird and Chester were convicted of conspiracy to commit murder. Since second and third degree murder do not require the specific intent to kill, *see* 18 Pa. C.S.A. § 2502, we can not agree with the state court's harmless error analysis.

Although even a cursory reading of *Chester I* establishes that the state supreme court never addressed the merits of Laird's due process claim, the Commonwealth nevertheless argues that "[t]he district court's finding that the Pennsylvania Supreme Court rejected [Laird's accomplice liability claim] without ever having reviewed it is clearly not supported by the record." Appellant's Br. at 25. That is clearly wrong.

Moreover, the weakness of the Commonwealth's position is underscored by the Pennsylvania Supreme Court's decision in *Laird I* rejecting the contention that Laird's claim of inconsistent verdicts had been previously litigated on direct appeal. The Court explained: "only co-defendant Chester raised this issue, it has not been finally litigated by [Laird]." *Laird I*, 726 A.2d at 355. Therefore, the state supreme court did not intend for its resolution of claims raised by one defendant to control unlitigated claims of the co-defendant.

Alternatively, the Commonwealth argues that if Laird did not raise the accomplice liability instruction on direct appeal, we can not review it on habeas review because Laird can not establish the "cause and prejudice" or "miscarriage of justice"

12

required for reviewing a procedurally defaulted claim. According to this alternative position, "Laird, as Chester did, could have raised this issue on direct appeal and it would have been addressed by both the state trial and the Pennsylvania Supreme Court." Appellant's Br. at 25. The district court rejected this argument and so do we.

The district court correctly concluded that Laird's accomplice liability claim is not procedurally defaulted. We will affirm that conclusion for substantially the reasons set forth by the district court in its well-reasoned opinion. *See Laird II*, 159 F. Supp. 2d at 70-77.[7] For the reasons that follow, we also affirm the district court's conclusion that the trial court's accomplice liability instruction denied Laird a fair trial in violation of the Due Process Clause of the Fourteenth Amendment.

### A. The Accomplice Liability Charge.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that due process "protects the accused against

---

[7] Briefly stated, the district court relied in part upon our holding in *Doctor v. Walters*, 96 F.3d 675, 683-84 (3d Cir. 1996), and the Pennsylvania Supreme Court's reversal of the "relaxed waiver rule" in *Commonwealth v. Albrecht,* 720 A.2d 693, 700 (Pa. 1998), to conclude that Laird's claim was not procedurally defaulted and that no "adequate and independent" state procedural rule barred federal habeas review of the merits of Laird's challenge to the accomplice liability charge.

13

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id*. at 364. Laird argues that the jury instructions pertaining to accomplice liability for first-degree murder relieved the Commonwealth of its burden of proving beyond a reasonable doubt that he intended to kill Milano.

Under Pennsylvania law, first-degree murder requires the specific intent to kill, and that *mens rea* is also required of accomplices and co-conspirators. *See* 18 Pa. C.S. § 2502(a); *Smith v. Horn*, 120 F.3d 400, 410 (3d Cir. 1997) (*citing Commonwealth v. Huffman*, 638 A.2d 961 (Pa. 1994)). On habeas review, we must analyze the challenged portions of the jury instruction in context with the entire charge and determine "whether there is a *reasonable likelihood* that the jury has applied the challenged instructions in a way that violates the Constitution." *Smith,* 120 F.3d at 411.

During the guilt phase of Laird's trial, the court gave the following instruction on accomplice liability:

A person is guilty of a particular crime if he is an accomplice of another person who commits that crime. A defendant does not become an accomplice merely by being present at the scene or knowing about a crime. He is an accomplice, however, if with the intent of promotion or facilitating commission of a crime he solicits, or commands or encourages or requests the other person to commit it or if he aids, agrees to aid, or attempts to aid the other person in planning the

14

crime or committing the crime. . . . You may find the defendant guilty of a particular crime on the theory that he was an accomplice so long as you are satisfied beyond a reasonable doubt that the crime was committed and the defendant was an accomplice of the person who committed it.

App. at 231-32. Thereafter, the court gave the following instruction on first-degree murder:

You may find a defendant guilty of first degree murder if you are satisfied that the following four elements have been proved beyond a reasonable doubt:
First, that Anthony Milano is dead.
Second, that a defendant or an accomplice of the defendant killed him.
Third, that the killing was with specific intent to kill.
And, fourth, that the killing was with malice as I have defined that term for you.
A killing is with specific intent to kill if it is willful, deliberate, and premeditated; that is, if it is committed by a person who has a fully informed intent to kill and is conscious of his own intent.

App. at 253-54.

As noted above, Chester and Laird both testified that the other killed Milano. Each defendant admitted participating in

15

the kidnaping, but denied any intent to kill Milano or to help the other kill him. Since Laird was convicted of conspiracy, kidnaping and aggravated assault as well as murder generally, he argues that the instructions allowed the jury to convict him of first-degree murder as Chester's accomplice even if the jury was not convinced of a shared intent to kill. The Commonwealth attempts to counter by arguing that "it is logical that the subsequent references to 'accomplice' were made in reference to the particular offense that the trial court was discussing." Appellant's Br. at 35. The Commonwealth therefore urges us to infer that the jury understood an "accomplice" to first-degree murder must have the specific intent to kill required for a conviction of that crime.

However, that argument stretches the contours of the challenged jury instruction beyond the words of the charge. Moreover, we have already rejected the identical position in *Smith*. There, Smith and his accomplices killed their victim while robbing a pharmacy, and the trial court gave an accomplice liability charge that was nearly identical to the one at issue here. Relevant portions of that charge are quoted at length below.[8]

---

[8] In *Smith*, the court first explained the crime of homicide without referring to the specific degrees of that crime. The court then explained the crime of conspiracy without referring to a substantive crime:

> You should ... determine ... *whether there was the requisite intent to enter into this conspiracy to*

> *commit the robbery and the killing which the Commonwealth contends flowed therefrom or whether there was the requisite intent to enter in and be the accomplice with the other in bringing this about.* That is to say, *did Clifford Smith agree,* although not necessarily by words, but by conduct and circumstances *to bring about this robbery which, in turn, led to the ultimate shooting,* so the Commonwealth contends, and the killing of Richard Sharp? *If so, then the major basis of conspiratorial liability exists as to him.*

*Smith*, 120 F.3d at 406 (alteration in original). The court next explained the various degrees of murder in context with the concept of accomplice liability:

You would ... have to decide *whether the act of the perpetrator, or his accomplice, at the time of the killing was acting [sic] with malice,* as we have defined that term to you. Was he acting willfully, deliberately and with premeditation, although at that time not having the specific intent to kill, but having the specific intent to inflict grievous bodily harm upon Richard Sharp, *because that really is the distinction between third degree murder and first degree murder....*
If you would conclude that there was specific intent to take life, you would then have to determine if it was second degree murder, or as we call it felony murder, because it involves killing incidental to a felony.... [F]or persons to be accomplices in felony murder they must have a common design. In other

Smith claimed that the charge denied him a fair trial. In reviewing the challenged jury instruction, we said: "nothing in this charge would lead the jury to think that, when the court instructed the jury on murder, and the court used the word 'accomplice,' that word meant only 'accomplice in the murder.' Indeed, this charge reinforces the notion that an accomplice for one purpose is an accomplice for all purposes." *Id*. at 414. That is precisely the problem here.

The Commonwealth attempts to distinguish *Smith* by arguing that the only focus of Chester and Laird was harming Milano. According to the Commonwealth, unlike Smith, Laird and Chester did not also agree to commit a crime such as theft or robbery. However, that position ignores the record. Chester

---

words, the shared intent to commit that felony, the robbery in this case, and in furtherance thereof the killing was perpetrated as a natural act which flowed from the robbery itself. However, ... even though you would conclude that there was the felony of robbery committed, but would further conclude that all of the elements of first degree murder were present, you ... would be justified in returning a verdict of first degree murder, if you determine beyond a reasonable doubt that *the killing was intentional;* that is, that *there was a specific conscious intent to kill and this was done willfully, deliberately, and with premeditation.*

*Id.* at 406. (alteration in original).

18

and Laird were also convicted of kidnaping, aggravated assault, false imprisonment, and unlawful restraint. Given the court's instruction on accomplice liability, the jury could easily have convicted Laird of first-degree murder based on his conspiring with Chester to kidnap or assault Milano even if jurors were not convinced beyond a reasonable doubt that Laird intended to kill him.

The Commonwealth also points out that the trial court instructed the jury that a defendant could not be found guilty of first-degree murder unless the defendant was "at that time, capable of forming a specific intent to kill . . . ." App. at 261. However, that instruction was given in the context of a charge on the diminished capacity defense to first-degree murder. When that defense is implicated, voluntary intoxication can reduce first-degree murder to third-degree murder by raising a reasonable doubt about the perpetrator's ability to form the specific intent to kill. *See Whitney v. Horn*, 280 F.3d 240, 254 (3d Cir. 2002) (*citing Commonwealth v. Graves*, 334 A.2d 661 (Pa. 1975)). Given that context, we can not conclude that such a brief reference to the required *mens rea* for first-degree murder remedies the incorrect and misleading portion of the instruction. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. [We have] no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 471 U.S. 307, 322 (1985).

Moreover, the problem here is exacerbated because, as noted above, the Pennsylvania Supreme Court, while recognizing the problem with the instruction, did not attempt to

19

resolve it.

Thus, inasmuch as Laird's claim was not adjudicated on the merits by the state court, the district court correctly concluded that AEDPA's deferential standard of review does not apply and that the instruction was erroneous. This does not, however, end our inquiry. We must still determine if the error was harmless as the Commonwealth claims and as the Pennsylvania Supreme Court suggested in *Chester II*.

## B. Harmless Error.

In determining whether this error was harmless, we must examine whether it "had a 'substantial and injurious effect or influence' on the verdict." *Smith*, 120 F.3d at 418 (citations omitted). If our analysis causes us "grave doubt" about the integrity of the verdict, it can not be deemed harmless, and Laird is entitled to relief. *Id.*

The Commonwealth offers two arguments in support of its claim that Laird is not entitled to habeas relief. First, as suggested by the Pennsylvania Supreme Court in *Chester II*, it contends that the error was harmless because Laird was convicted of *conspiracy* to commit murder. Thus, argues the Commonwealth, the jury must have found that he had the *mens rea* required for the crime of murder. We are not persuaded. Laird was convicted of conspiracy to commit *murder*, not conspiracy to commit *first-degree* murder. We have already explained that the jury might have believed that Laird intended to kidnap and/or assault Milano, but that only Chester intended to kill him. Such a finding would have supported a conviction

20

for second-degree murder under Pennsylvania's felony murder rule, but it would not support a finding of that shared specific intent necessary to convict Laird of conspiracy to commit first-degree murder. *See* 18 Pa. C.S.A. § 2502(b), *Commonwealth v. Waters*, 418 A.2d 312, 93-94 (Pa. 1980).

To further compound the problem, while instructing the jury on the crime of conspiracy, the trial court told the jury that they could convict Laird of a substantive offense if: "the particular crime, while it may *differ from the agreed crime*, was committed by the coconspirator in furtherance of his and the defendant's common design." App. at 233 (emphasis added). Thus, the conspiracy instruction clearly allowed the jury to convict for first-degree murder without a finding that each conspirator had the specific intent to kill as long as the killing was "in furtherance" of the kidnaping or assault Laird had been charged with.

The Commonwealth also argues that the error was harmless in the context of the evidence at trial "which overwhelmingly established that Laird intentionally killed the victim." Appellant's Br. at 39. The Commonwealth claims that "the deliberate actions of Laird establish a concerted conscious decision to take the life of the victim. The actions of Laird individually reflect elements of premeditation and deliberation necessary to prove murder of the first degree." Appellant's Br. at 32. We can not agree.

Although there is clearly sufficient evidence to sustain that position, we can not substitute ourselves for the jury by speculating about what portion of the testimony the jury

21

believed. The only testimony that Laird actually killed Milano came from Chester. The only testimony that it was Chester, came from Laird. In *Smith*, we discussed the evidence against Smith and his co-defendant and concluded that "[t]he evidence supporting [the] verdict demonstrates that it is *more likely* that Smith, rather than [his accomplice], killed [the victim]. However, this evidence and the factual findings it supports are not the 'functional equivalent' of, nor do they 'effectively embrace' a finding *beyond a reasonable doubt* that Smith killed [the victim]." *Smith*, 120 F.3d 418 (citations omitted). That is precisely the problem here.

Several witnesses testified to statements Chester made shortly after the killing. Those statements corroborate Chester's testimony that Laird was the actual killer. However, Chester also made several conflicting statements to investigators. It was for the jury, not a court, to determine the identity and *mens rea* of the actual killer.

This in no way suggests that the evidence was insufficient to establish that the actual killer had the specific intent to kill. Given the severity and location of the wounds, there is little doubt that whoever inflicted them intended to kill Mr. Milano. That is not the issue here. Rather, we must determine if the instructions explained that the killer's co-conspirator must have also intended that Milano be killed. The district court correctly held that the instruction on accomplice liability raises grave doubts about that question, and we will therefore affirm the district court's conclusion that the error was not harmless.

22

## C. *Bronshtein v. Horn*

Our discussion would be incomplete if we did not mention our recent holding in *Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005). There, the defendant was convicted of first-degree murder and conspiracy. We held that the charge on accomplice liability "misleadingly suggested that Bronshtein could be found guilty of first-degree murder even if he did not have the specific intent to kill." 404 F.3d at 711. We nevertheless denied relief on that claim because we concluded that the error was harmless.

Following the decision in *Bronshtein*, the parties filed supplemental briefs addressing whether or not that decision impacted this appeal. Not surprisingly, the Commonwealth now suggests that *Bronshtein* undermines the district court's analysis of Laird's jury charge. The Commonwealth argues that any error here was also harmless given the rationale in *Bronshtein.* We can not agree.

Bronshtein was convicted of first-degree murder, robbery, theft, and conspiracy. We held that, given the wording of the court's instruction, "the jury could [have found] Bronshtein guilty of first-degree murder if it found that he had conspired to commit the robbery and that another conspirator had killed [the victim] in furtherance of the robbery." *Id*. However, we reasoned that the error was harmless because the jury also convicted him of first-degree murder and conspiracy. The trial court had given the following instruction on accomplice liability for first-degree murder:

23

> *[I]n order to find the defendant guilty of first-degree murder as an accomplice, you must find the Commonwealth has proven beyond a reasonable doubt that the defendant shared a specific intent to kill* [the victim] *with the active perpetrator and encouraged or assisted the active perpetrator by comparable overt behavior.*
>
> Remember when we talked about first-degree murder? That's the one that requires that specific intent to kill? Yes, it is possible to convict the defendant as an accomplice to that even if he's not the one who killed [the victim], but *you'd have to find that he shared that specific intent to kill . . . before you can find him guilty as an accomplice,* and that he assisted the active perpetrator by some comparable overt behavior.

*Id.* at 711 (emphasis added). Since the instructions explained that shared criminal intent is necessary to convict for first-degree murder, and since Bronshtein was convicted of conspiracy as well as first-degree murder, we reasoned that the jury must have been convinced beyond a reasonable doubt that he was either the actual killer or shared the specific intent to kill required for first-degree murder. Thus, the erroneous charge was harmless. That is not the situation here.

As we explained above, the trial court here did not explain that a co-conspirator can not be convicted of first-degree murder absent a shared specific intent to kill. Moreover, Bronshtein was convicted of first-degree murder. Laird was convicted of first, second, *and* third-degree murder, as well as

24

conspiracy. Thus, there is no way for us to determine if the jury understood that an accomplice to a first-degree murder must also intend to kill the victim. *See Commonwealth v. Waters*, 418 A.2d at 93-94.

## III.

For the reasons set forth herein, we will affirm the district court's conditional grant of habeas relief and remand to the district court so that the matter may be returned to state court for further proceedings consistent with this opinion.[9]

---

[9] Our holding in no way undermines the jury's guilty verdict on the remaining charges. Since his conviction for second-degree murder carries a mandatory sentence of life imprisonment, the Commonwealth will have the option of retrying Laird for first-degree murder followed by a new sentencing for that charge if he is convicted, and/or causing Laird to be sentenced on the remaining charges that he was convicted of. Since the jury imposed the death sentence on Laird's first-degree murder conviction, it appears that the mandatory sentence of life imprisonment without the possibility of parole for his second-degree murder conviction was never formally imposed.