J-S44021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| OMAR SHAMSIDDEEN, | |
| Appellant | No. 122 EDA 2015 |

Appeal from the PCRA Order December 11, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-1142781-1993

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 22, 2016**

Appellant, Omar Shamsiddeen, appeals from the December 11, 2014 order of the Court of Common Pleas of Philadelphia County ("PCRA court"), denying relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Appellant's sole issue on appeal is whether the PCRA court erred in denying the PCRA petition without a hearing.  Upon review, we affirm in part, reverse in part, and remand for resentencing.

The PCRA court summarized the procedural background of this matter in its Pa.R.A.P. 1925(a) opinion, which we incorporate here by reference. PCRA Court Opinion, 8/18/15, at 1-7.  Briefly, after a jury trial that occurred from  October 14 through October 20, 1994, Appellant was convicted of first-degree murder, criminal conspiracy, and possession of an instrument of crime ("PIC").  Appellant was sentenced to life without the possibility of

parole on the murder charge, and sentenced concurrently to terms of five to ten years on the criminal conspiracy charge, and two and one-half to five years for PIC.

After numerous PCRA petitions to reinstate his direct appellate rights, this Court affirmed his convictions on direct appeal on May 27, 2011. **See Commonwealth v. Shamsiddeen**, No. 91 EDA 2009, unpublished memorandum, at 1 (Pa. Super. Filed May 27, 2011).

Appellant filed a *pro se* PCRA petition on October 5, 2011. This petition was amended twice. The second amendment is the instant petition, which counsel filed on December 21, 2012. The PCRA court dismissed the petition without a hearing. The instant appeal followed.

Appellant raises a sole issue on appeal.

> I.    Did the PCRA [c]ourt err when it dismiss[ed] [] Appellant's [a]mended PCRA [p]etition without a hearing, and all where [Appellant] properly pled, and would have been able to prove, that he was entitled to relief.

Appellant's Brief at 3.

"There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008) (citing **Commonwealth v. Barbosa**, 819 A.2d 81 (Pa. Super. 2003)). An ineffective assistance of counsel claim "must meet all three prongs of the test for ineffectiveness, if the court can determine without an evidentiary

- 2 -

hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." ***Jones***, 942 A.2d at 906. All of the underlying PCRA claims in the instant matter, save one,[1] are allegations of ineffective assistance of counsel.

A PCRA petitioner is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "While an appellant may need a hearing to explore the validity of counsel's trial strategy pursuant to the second prong, such a hearing will be rendered superfluous if the court can determine from the record that there has been no prejudice to the appellant under the third prong." ***Jones***, 942 A.2d at 907. "A petitioner must prove all three factors of the '***Pierce***[2] test,' or the claim fails." ***Reyes-Rodriguez***, 11 A.3d at 780. "[O]n appeal, a petitioner must adequately discuss all three factors of the '***Pierce***' test or the appellate court will reject the claim." ***Id.***

---

[1] Appellant's claim that he is a juvenile serving a life without parole sentence is his only claim that does not stem from ineffective assistance of counsel.

[2] ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987).

Appellant's first ineffectiveness claim is that "[t]rial counsel was ineffective for failing to call available witness Amina Shamsiddeen to testify at trial, and where her testimony would have been exculpatory and would have made a difference in the outcome." Amended PCRA Petition, 12/21/2012, at ¶ 15(b); Appellant's Brief at 9-12. The PCRA court's opinion, authored by the Honorable Ellen H. Ceisler, adequately addresses this issue. *See* PCRA Court Opinion, 8/18/15, at 10-13. Appellant failed to plead that counsel had no reasonable basis for failing to call Amina Shamsiddeen; therefore, Appellant's claim fails. *See Reyes-Rodriguez*, 111 A.3d at 780.

Appellant's second ineffectiveness claim is that "[trial counsel was ineffective when he gave patently inadequate advice to [Appellant] with regard to whether or not [Appellant] should testify, and where [Appellant's] failure to testify could be said to have made a difference at trial." Amended PCRA Petition, 12/21/2012, at ¶ 15(c); Appellant's Brief at 12-14. The PCRA court's opinion adequately addresses this issue. *See* PCRA Court Opinion, 8/18/15, at 13-15. "It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." *Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa. Super. 2000) (citations omitted). As the PCRA court noted, Appellant was colloquied on the record and made a knowing, voluntary, and intelligent waiver. Furthermore, Appellant failed to plead all three prongs of the *Pierce* test. *See Reyes-Rodriguez*, 111 A.3d at 780. Appellant's claim fails.

Appellants third ineffectiveness claim is that "[t]rial counsel was ineffective when counsel failed to object to or otherwise challenge the trial court's erroneous instruction on accomplice liability, which unfairly prejudiced [Appellant]."  Amended PCRA Petition, 12/21/2012, at ¶ 15(d); Appellant's Brief at 14-16.  Appellant failed to plead the three prongs of the *Pierce* test; therefore, Appellant's claim fails.[3]  **See Reyes-Rodriguez**, 111 A.3d at 780.

Appellant's fourth ineffectiveness claim is that "[t]rial counsel was ineffective for failing to object and thereafter request an individual colloquy of the jurors to evaluate the potential prejudice resulting from communication between members of the jury and the outside world."  Amended PCRA Petition, 12/21/2012, at ¶ 15(e); Appellant's Brief at 16-17.  Appellant failed to plead the three prongs of the **Pierce** test; therefore, Appellant's claim fails.  Even if the issue were properly pled, the claim is meritless as discussed in the PCRA court's opinion.  **See** PCRA Court Opinion, 8/18/15, at 16-18.

Appellant's final ineffectiveness claim is that "[t]rial counsel and appellate counsel were ineffective for failing to raise and preserve the issue

_____

[3] Even if Appellant properly pled all three prongs of the **Pierce** test, upon review of the limited record before the Court, the issue is meritless and was adequately addressed in the PCRA court's opinion.  **See** PCRA Court Opinion, 8/18/15, at 14-16.

of sufficiency of the evidence regarding [c]riminal [c]onspiracy, and the defendant should be awarded an arrest of judgment." Amended PCRA Petition, 12/21/2012, at ¶ 15(f); Appellant's Brief at 18-20. In order to be eligible for relief under the PCRA, the petitioner must be "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S.A. § 9543(a)(1)(i). Appellant was sentenced on October 20, 1994 to a maximum ten year term for criminal conspiracy to run concurrently with his sentence of life without possibility of parole. Appellant completed his sentence on October 20, 1994; therefore, Appellant is no longer serving a sentence for criminal conspiracy and is ineligible for relief under the PCRA. Appellant's claim fails.

In conclusion, the PCRA court properly found that Appellant was not entitled to an evidentiary hearing because Appellant was unable to meet all three prongs of the *Pierce* test for each underlying claim. Therefore, the trial court did not err when it dismissed Appellant's PCRA petition without an evidentiary hearing.

Finally, while Appellant did not discuss the issue in his brief, Appellant preserved his challenge that he was a juvenile sentenced to life without parole, which the Supreme Court found unconstitutional in *Miller v. Alabama*, 132 S.Ct. 2455 (2012). Furthermore, in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), the Supreme Court found that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review. *Montgomery*, 136 S.Ct. at 732. In the matter *sub*

*judice*, Appellant was a juvenile at the time of the instant offense. Due to the Supreme Court's decisions in **Miller** and **Montgomery**, his life sentence without parole is unlawful. Therefore, we reverse the order of the PCRA Court and remand the matter for resentencing.[4]

We direct that a copy of the PCRA court's August 18, 2015 opinion be attached to any future filings in this case.

Order affirmed in part and reversed in part. Remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2016

___

[4] We recognize that the PCRA court did not have the benefit of the **Montgomery** decision at the time its order and opinion were issued.



FILED

AUG 1 8 2015

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     COURT OF COMMON PLEAS
    :     CP-51-CR-1142781-1993

v.     :
    :
    :
    :     SUPERIOR COURT
OMAR SHAMSIDDEEN     :     122 EDA 2015
    :

OPINION

ELLEN CEISLER, J.                 DATE: August 18, 2015

The instant appeal arises from Appellant Omar Shamsiddeen's (hereinafter "Appellant") appeal of this Court's denial of his Post-Conviction Relief Act petition. After careful review of the entire record, this Court denied each of Appellant's claims as being without merit, without a hearing. The Appellant timely filed the instant appeal. For the reasons set forth below, this Court's Order denying Appellant's PCRA petition should be affirmed.

I.     FACTUAL AND PROCEDURAL HISTORY

Setting forth the facts presented at trial, in the light most favorable to the Commonwealth as the prevailing party at trial,[1] the circumstances that led to Appellant's arrest, conviction, and sentencing are as follows:

On April 25, 1993, at approximately 4:20 p.m., Philadelphia police officers responded to reports of gunfire at the intersection of 18th and Montrose Streets in Philadelphia. N.T. 10/14/94 at 44. Upon arrival, the officers found the victim Thomas Dorsey lying dead on the southeast corner of that intersection with gunshot wounds to his chest, back and legs. Id. at 45-46. The

---

[1] Com. v. Colavita, 993 A.2d 874, 886 (Pa. 2010)(citing Com. v. Sam, 952 A.2d 565, 573 (Pa. 2008)).

1

*Appendix*

autopsy conducted by the Philadelphia Medical Examiner determined that Dorsey had been shot sixteen times. N.T. 10/17/94 at 56.Philadelphia Police Department crime scene investigators recovered a total of thirty spent cartridge casings from the scene of the shooting. N.T. 10/14/94 at 59. While no suspects were on the scene when the police arrived, police interviews with witnesses revealed that a blue four-door sedan, with rust on the trunk, had been observed leaving the scene of the shooting. N.T. 10/6/94 at 6-8, 15.

Six days later, on May 1, 1993, Philadelphia Police Officers Michael Maresca and his partner, Richard Gramlich were on duty, in uniform, driving a marked emergency patrol wagon, when they observed the driver of a blue four-door sedan, with rust on the trunk, drive through the intersection of 30th and Dickinson Streets without stopping at the stop sign. This intersection is located approximately three-quarters of a mile from the shooting crime scene. N.T. 10/14/94 at 85-86. These Officers were aware that this car matched the description of vehicle described as leaving the scene of the shooting as the description of the car had been broadcast in the Philadelphia Police Department's General Radio Message at least once a day after the shooting. N.T. 10/6/94 at 7, 14.

The Officers decided to investigate and activated their patrol wagon lights to signal the driver to pull over. The Appellant, then 17 years old, was the driver of the suspect vehicle. N.T. 10/14/94 at 85-86. Appellant, who had disguised himself as a woman by wearing a straw sunflower hat and a shawl, quickly pulled over, jumped out of the car, and fled. Id. at 86-87. Appellant then turned and ran around the front of his vehicle and began to approach the officers' patrol car with his hand on what appeared to be the butt of a gun tucked in his waistband. Id. The Officers pulled their guns and the Appellant again turned and ran.[2] N.T. 10/6/94, at 87. After a brief foot pursuit, the Officer's apprehended the Appellant and recovered the gun. N.T. 10/14/94 at 88. Appellant was arrested for Violation of the Uniform Firearms Act. N.T. 10/7/94 at 5, 7.

---

[2] Officer Maresca's description of how the arrest occurred is as follows: "I started to chase him then he started to come back towards me on an angle towards Dickinson Street heading eastbound. I cut him off and I wrestled with him on the car to get the gun. I was able to get the gun, pass it to my partner, and cuffed him." N.T. 10/6/94 at 104. Maresca further testified on cross-examination that the reason for the Defendant's odd change in direction in the middle of this "chase" was due to the Defendant's "confusion...that he didn't know which way to run and he ran at me, right towards me and I was able to cut him off." N.T. 10/14/94 at 109-110.

2

The Officer's placed the confiscated gun on a property receipt and submitted it to the Philadelphia Firearms Examination Unit that same day. N.T. 10/17/94 at 20-21, 143. The Appellant was taken into custody and questioned by Philadelphia Homicide Detective William Egenlauf.[3] The Appellant gave a recorded and signed statement[4] wherein he admitted that he had been involved in the shooting incident which killed Mr. Dorsey, but claimed that he had acted in self-defense. N.T. 10/17/94 at 30-36, 44-45.

Specifically, in his statement, Appellant stated that he and two of his friends were driving in the Appellant's car when the occupants of two separate cars driving behind him started beeping their horns, flashing their high beams, and yelling at the Appellant to pull over. N.T. 10/17/94 at 30-31. Appellant stopped his car, whereupon the two cars boxed him in. Id. at 31. Four men then jumped out of both of the cars and began firing guns at Appellant and his friends. Id. According to the Appellant, of the four men, he only knew the decedent Thomas Dorsey Id. at 32.[5] Appellant (who apparently was unlawfully in possession of a gun at the time) returned fire towards Dorsey, firing three rounds before his gun jammed. Appellant than fled. Id. at 31-34. According to Appellant's statement, he recovered his car later when he saw it parked on the street a few blocks from the crime scene. Id. at 34-36.[6]

The weapon that the police recovered from Appellant at the time of his arrest was a nine-millimeter handgun. N.T. 10/17/94 at 142-49. On May 6, 1993, Officer Jackson[7] of the Firearms

---

[3] The arresting officers—Maresca and Gramlich—testified that Appellant was brought in to homicide because his car matched the description of the car seen leaving the crime scene and they had "additional information that he was involved in a shooting." N.T. 10/7/84 at 34.

[4] Appellant reviewed a typed copy of his complete statement and made several corrections, each of which he initialed. N.T. 10/14/94 at 46-47.

[5] No gun was found at the scene or on the victim, Thomas Dorsey. N.T. 10/17/94 at 19-35.

[6] The Commonwealth called two eye-witnesses at trial to testify, Richard Washington and Felice Brinkley. While neither witness gave much information, their stories partially corroborated Appellant's version of what occurred on April 25, 1993. N.T. 10/17/94 at 82-126.

[7] By the time of Appellant's trial, Officer Jackson had retired from the Philadelphia Firearms Examination Unit. N.T. 10/17/94 at 137. Officer Carl Rone, of the Firearms Examination Unit, testified at trial as to Officer Jackson's findings. Id.

3

Examination Unit conducted a ballistic analysis of the cartridge casings and the Appellant's gun and determined that eight of the thirty spent cartridge shells found at the crime scene were fired from the Appellant's gun. Id. Additionally two of the bullets removed from decedent Dorsey's body (one bullet was lodged in decedent's abdominal wall and the other was lodged in decedent's upper thigh), were fired from the Appellant's gun. N.T. 10/17/94 at 142-49, 157.[8] The Philadelphia Assistant Medical Examiner Dr. Edwin Lieberman[9] testified that although all of the bullet wounds likely contributed to Mr. Dorsey's death, the bullet wound to the decedent's abdominal wall was more immediately fatal. Id. at 58. It was this evidence that prompted police to obtain an arrest warrant for Appellant for his involvement in the murder of Thomas Dorsey, which was issued on July 2, 1993. Id. Appellant was arrested on July 4, 1993.

Appellant's trial commenced on October 14, 1994. N.T. 10/12/94 at 1.[10] On October 20, 1994, the jury convicted Appellant of First-Degree Murder, Criminal Conspiracy, and the Possession of an Instrument of Crime (PIC). N.T. 10/20/94 at 121-23. As the Commonwealth was seeking the death penalty, the Appellant's penalty phase hearing occurred on October 20, 1994. After that hearing, the jury determined that the existence of mitigating circumstances (the Appellant's age) outweighed the existence of aggravating circumstances (Appellant put other individuals at a grave risk of death in addition to the Decedent), and returned a sentence of life imprisonment without the possibility of parole on the charge of First Degree Murder.[11] N.T. 10/20/94 at 111. Appellant was sentenced to concurrent terms of five (5) to ten (10) years

---

[8] The rest of the nine-millimeter casings found at the crime scene (seven casings) were later matched to the gun of Willie Dukes, another suspected participant in this shooting. Dukes was shot and killed shortly after the April 25, 1993 incident. N.T. 10/7/94 at 11-12.

[9] A Dr. Hoyer (member of the Medical Examiner's staff in 1993) conducted the actual autopsy of Thomas Dorsey. N.T. 10/17/94 at 70. Dr. Lieberman reviewed the autopsy report and findings and testified about them during trial. Id.

[10] Immediately prior to trial, Appellant's counsel argued a Motion to Suppress Appellant's Statement, claiming in part that Appellant had not been properly advised of his right to have counsel present during his interrogation and that, therefore, his statement should not be admitted as evidence. N.T. 10/5/94 at 5-7. The motion was denied. The Trial Court's actual ruling on the Suppression Motion could not be found in the transcripts, however, various filings from both the Appellant and the Commonwealth, as well as references made from the case record (that, for instance, all of the evidence that Defendant's counsel wanted suppressed was used during trial), confirm that this Motion was, in fact, denied. Defendant's Amended Post Conviction Relief Act Petition 12/21/2012; Commonwealth Attorney's Letter Brief 1/26/11.

[11] A term of life imprisonment in the Commonwealth is without the possibility of parole. 42 Pa. C.S. §§ 9711, 9715

4

imprisonment for criminal conspiracy, and two and one-half (2½) to five (5) years imprisonment for Possession of an Instrument of Crime. Id.

A Notice of Appeal was filed on behalf of Appellant by his trial counsel Bernard L. Siegel, Esquire.[12] This appeal was ultimately dismissed by the Superior Court on January 4, 1996 and again on March 12, 1996,[13] because of counsel's failure to file a brief. On November 14, 1996, Appellant filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S. § 9545(b),[14] which was granted by Trial Court, resulting in his direct appeal rights being reinstated on September 13, 2000.[15]

Daniel Paul Alva, Esquire, was then appointed to represent Appellant. Mr. Alva filed a direct appeal *nunc pro tunc* on October 2, 2000; however, the judgment of sentence was affirmed on April 11, 2002, due to counsel's failure to file a Pa. R.A.P. 1925(b) Statement. Com. v. Shamsiddeen, 803 A.2d 797 (Table) (Pa. Super. Ct. 2002), 2840 EDA 2000. Allocatur to the Supreme Court was denied on October 11, 2002. Com. v. Shamsiddeen, 809 A.2d 903 (Table) (Pa. 2002), 194 EAL 2002.[16]

Thereafter, on December 17, 2003, Appellant filed another *pro se* PCRA petition—again

---

[12] Mr. Siegel represented the Defendant at trial and on direct appeal. Mr. Siegel has since passed away. It should be noted that Mr. Siegal was a highly experienced and respected criminal defense attorney.

[13] After the Superior Court's Order of January 4, 1996, dismissing the Defendant's appeal, the Defendant filed a *pro se* petition under the PCRA on March 4, 1996, seeking leave to file a notice of appeal, *nunc pro tunc*.

[14] This was not the Defendant's first PCRA petition. On February 6, 1995, the Defendant filed his first *pro se* petition for post-conviction relief, which was dismissed as being "premature" because the Defendant's direct appeal was still pending.

[15] While it is not clear from the record, somehow the petition filed on March 4, 1996 was not actually dismissed. This may explain the gap in time between the filing of that petition, and the granting of the Defendant's right to appeal. *See* Com. v. Shamsiddeen, 2005 WL 5784524, *1-*2 (Pa. Ct. Com. Pleas 2005), *rev'd* Com. v. Shamsiddeen, 898 A.2d 1134 (Pa. Super. Ct. 2006) (discussing this case's procedural history from 1994 through 2005).

[16] There is some discrepancy between the Criminal Docket maintained by the Philadelphia County Court of Common Pleas and this procedural history. It is this court's belief that due to the extensive record that indicates the existence of PCRA filings prior to 2004, that the Docket is missing earlier filings related to Defendant Omar Shamsiddeen.

5

seeking restoration of his direct appeal rights *nunc pro tunc*. David Belmont, Esquire, was subsequently being appointed as his new counsel. Though the PCRA court denied the petition as being without merit, the Superior Court reversed and remanded the matter on February 27, 2006, restoring Defendant's appellate rights *nunc pro tunc* for a second time. Com. v. Shamsiddeen, 898 A.2d 1134 (Pa. Super. Ct. 2006); however, a notice of appeal was never filed, as required by Pa. R.A.P. 903 in order to commence the appeals process.

On February 28, 2007, Defendant filed a third *pro se* PCRA petition, yet again seeking restoration of his direct appeal rights *nunc pro tunc*. Sondra R. Rodrigues, Esquire, was appointed counsel on behalf of Defendant. By this point, the original presiding trial judge had been appointed to the Pennsylvania Supreme Court and, accordingly, this Court was assigned to handle this appeal. Following Ms. Rodrigues' appointment, and in light of the Commonwealth's attorney agreeing that Defendant's appellate rights should be restored, this Court ordered the restoration of Defendant's appellate rights *nunc pro tunc* on November 14, 2008.

On August 21, 2009, and as directed by this Court, Appellant's counsel initiated the direct appeal and filed a timely Statement of Errors, pursuant to Pa. R.A.P 1925(b). In his 1925(b) Statement, Appellant made several ineffective assistance of counsel claims, as well as a claim that the trial court erred by improperly re-instructing the jury with regard to accomplice and co-conspirator liability. Because ineffective assistance claims can only be brought in a PCRA petition after the direct appeal has ended, this Court examined only the claims of error pertaining to the trial court. *See* Com. v. Grant, 803 A.2d 726 (Pa. 2002) (allegations that trial counsel was ineffective must not be made during a direct appeal, but must be made after that appeal has been concluded and a collateral attack under PCRA is filed).

After thoroughly reviewing the entire record, on March 24, 2010, this Court issued an Opinion pertaining to the issues raised by the Appellant in what was essentially his first direct appeal. This Court determined that there were no prejudicial or reversible errors and, thus, that Defendant's request for relief should not be granted. On May 27, 2011, the Superior Court affirmed the judgement of this Court, effectively concluding Appellant's direct appeal.[17]

---

[17] 91 EDA 2009.

6

On October 5, 2011, Defendant filed a fourth *pro se* PCRA petition. This petition was subsequently amended twice, once by Defendant on August 16, 2012, and once by appointed counsel, Lee Mandell, Esquire, on December 21, 2012. The final amended petition sought relief in the form of an evidentiary hearing, an arrest of judgment or, alternatively, a new trial on claims of ineffective assistance of trial counsel and the unconstitutionality of the sentence currently being served by Appellant. The Commonwealth filed a Motion to Dismiss on December 3, 2013. After careful review of the record and pleadings, on December 11, 2014, this Court dismissed Appellant's PCRA petition as being without merit, without a hearing.[18]

On January 7, 2015, Appellant's counsel appealed this Court's decision to the Superior Court. That same day, this Court ordered Appellant to file a Statement of Errors, which Defendant filed on January 28, 2015, and which is set forth *verbatim* as follows:

1. That the Post-Conviction Relief Act (PCRA) Court erred when it dismissed Defendant's Amended PCRA Petition without a hearing, although Defendant properly pled and would have been able to prove that he was entitled to relief as Defendant claimed the following:

   (a) that he is a juvenile serving a life without parole sentence which is not permitted by law;

   (b) that trial counsel was ineffective for failing to call available witness Amina Shamsiddeen to testify at trial, and where her testimony would have been exculpatory and would have made a difference in the outcome;

   (c) that trial counsel was ineffective when he gave patently inadequate advice to the defendant with regard to whether or not the defendant should testify, and where the defendant's failure to testify could be said to have made a difference at the trial;

   (d) that trial counsel was ineffective when counsel failed to object to or

---

[18] Prior to this dismissal, on May 5, 2014, this court also issued an order denying the allocation of funds for a psychologist and for investigative services to prepare a report on the Defendant's social background with regard to a potential re-sentencing hearing.

7

otherwise challenge the trial court's erroneous instruction on accomplice liability, which unfairly prejudiced the defendant;

(e) that trial counsel was ineffective for failing to object and thereafter request an individual colloquy of the jurors to evaluate the potential prejudice resulting from communication between members of the jury and the outside world;

(f) that trial counsel and appellate counsel were ineffective for failing to raise and preserve the issue of the sufficiency of the evidence regarding Criminal Conspiracy, and the defendant should be awarded an arrest of judgment;

(g) that the defendant was victimized by ineffective assistance of counsel where counsel failed to object to extraneous matters being entered into the general accomplice instruction which exceeded the charge in the Bill of Information.

2. That Defendant is entitled to a remand to the PCRA Court as the PCRA Court erred when it denied the Defendant funds for a psychologist and investigative services, when the Defendant was entitled to those services and where proper representation could not be afforded to the Defendant without those services.

Defendant's Statement of Matters Complained of Pursuant to Rule of Appellate Procedure 1925(b) at 1-2 (hereinafter "1925(b) Statement").

## II.  DISCUSSION

To be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that: (1) they have been convicted of a crime under the laws of the Commonwealth;  (2) that, at the time relief is granted, they are currently serving a sentence of imprisonment; (3) that the conviction or sentence resulted from one or more of the following: (a) a violation of the Constitution of the Commonwealth of the Constitution or law of the United States, (b) ineffective assistance of counsel, or (c) the imposition of a sentence greater than the lawful maximum[19];  (4) that in the circumstances of this particular case, this violation or

---

[19] Additional PCRA claims that can be made, but which are irrelevant to the instant case, are: an unlawfully induced plea of guilty, the improper obstruction by government officials of the petitioner's right of appeal, the unavailability at the time of trial of exculpatory evidence that has subsequently become available, and a proceeding in a tribunal without jurisdiction. Id.

8

ineffective assistance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; (5) that the allegation of error has not been previously litigated or waived, and (6) that the failure to litigate the issue prior to, during trial, or on appeal could not have been the result of any rational, strategic, or tactical decision by counsel." 42 Pa. C.S. § 9543.

There is no absolute right to an evidentiary hearing on a PCRA petition. If the PCRA court determines from the record that there are no genuine issues of material fact, then a court can decline to hold a hearing, as no purpose would be served by any further proceedings. Com. v. Jones, 942 A.2d 903, 906 (Pa. Super. Ct. 2008); Com. v. Taylor, 933 A.2d 1035, 1040 (Pa. Super. Ct. 2006). For the reasons set forth below, after careful review of the entire record, this Court did not find any meritorious claims made by Appellant in his most recent PCRA petition and, therefore, did not hold an evidentiary hearing before denying this petition.

The first claim made by Defendant in his 1925(b) Statement is that "he is a juvenile serving a life without parole sentence which is not permitted by law." 1925(b) Statement at 1. In the landmark case Miller v. Alabama, 132 S.Ct. 2455, 2469 (2012) the United States Supreme Court held that a mandatory sentence of life imprisonment without parole, for those who were under the age of 18 at the time of their crimes, violates the Eighth Amendment's prohibition on cruel and unusual punishments, and is therefore unconstitutional. This opinion did not specifically address whether this holding applied retroactively to invalidate previously imposed life without parole sentences on juveniles;[20] However, in Com. v. Cunningham, 81 A.3d 1 (Pa. 2013), the Pennsylvania Supreme Court subsequently ruled that this lack of explicit direction in Miller v. Alabama means that the prohibition against mandatory life without parole sentences for juvenile offenders does not apply retroactively. In light of the ruling in Com. v. Cunningham, this Court has no choice but to hold that the Defendant's life sentence is still constitutional, and that therefore, this claim was without merit.

---

[20] On March 23, 2015, the Supreme Court of the United States granted a petition for writ of certiorari to hear arguments in the case State v. Montgomery, 141 So.3d 264 (La. 2014) to answer the question whether Miller v. Alabama adopted a new substantive rule that applies retroactively on collateral review to people condemned as juveniles to die in prison. Montgomery v. Louisiana, 135 S.Ct. 1546 (2015)(cert. granted). Briefs are scheduled to be filed before mid-September 2015, and argument is likely to occur in the Supreme Court's next session. Supreme Court of the United States Case No. 14-280 Docket, available at http://www.supremecourt.gov/docket/docket.aspx.

9

Appellant's next six claims are essentially variations of the same theme, namely, that for a variety of reasons, his defense was compromised by ineffective assistance of counsel, at both the trial and appellate levels.

In order to sustain a claim of ineffective assistance of counsel, Appellant must prove as to *each* claim that (1) his claim has arguable merit, (2) counsel had no reasonable basis for his action or inaction, and that (3) Defendant was prejudiced by counsel's act or omission. Com. v. Pierce, 527 A.2d 973, 975 (Pa. 1987) (adopting the United States Supreme Court's holding in Strickland v. Washington, 466 U.S. 668, 687 (1984)). If a petitioner fails to meet their burden of production and persuasion for any of these prongs, a claim of ineffectiveness should be denied. Com. v. Pierce, 786 A.2d 203, 213 (Pa. 2001).

Appellant's first ineffective assistance of counsel claim is that trial counsel was ineffective for failing to call his aunt[21] Amina Shamsiddeen to testify at trial. Failure to call a witness to testify during trial is not *per se* ineffective assistance of counsel. Com. v. Michaud, 70 A.3d 862, 868 (Pa. Super. Ct. 2013). Rather, to establish a claim that trial counsel was ineffective for failing to call a witness has arguable merit, the petitioner must demonstrate: (1) that the witness existed, (2) that the witness was available, (3) counsel knew of, or should have known of the existence of the witness, (4) the witness was willing to testify for the defense, and (5) the absence of the testimony was so prejudicial to petitioner to have denied him a fair trial. Com. v. Miner, 44 A.3d 684, 687 (Pa. Super. Ct. 2012).

Appellant asserts that Amina Shamsiddeen was available to testify at trial,[22] that trial counsel was aware of her existence, and that her testimony would have discredited[23] the

---

[21] Amina Shamsiddeen was not a blood relative of Appellant, but sometimes took care of him. N.T. 10/7/94 at 32-33.

[22] In Appellant's PCRA Petition, he claims to have a notarized affidavit from Amina Shamsiddeen that states that she was "available at trial, willing to cooperate with the defense, and trial counsel was aware of her existence." Defendant's Amended Post Conviction Relief Petition at 10. However, this Court was unable to find any such affidavit that was a part of the record.

[23] The Appellant argues that "the jury should have been afforded the opportunity by trial counsel to hear the testimony of Ms. Shamsiddeen since it was in opposition to the contention of the officers, in order to subject the

10

contentions made by the detectives. <u>Defendant's Amended Post Conviction Relief Act Petition 12/21/2012</u>, at 10. However, this Court need not address whether or not these assertions are sufficient to show that this issue has arguable merit, because, as detailed below, Appellant failed to establish that the absence of a reasonable basis for his trial attorney to fail to call Ms. Shamsiddeen to testify during the trial.

In a pre-trial hearing for a Motion to Suppress the Appellant's Statement,[24] the Trial Court heard testimony from the detectives who took Appellant's statement, as well as from Ms. Shamsiddeen, who was called as a witness by Appellant's attorney.[25] <u>N.T. 10/5/94</u>, <u>N.T. 10/6/94</u>, <u>N.T. 10/7/94</u>. Ms. Shamsiddeen's testimony regarding whether she consented[26] to the questioning of Appellant contradicted that of the detectives. <u>N.T. 10/7/94</u>, at 47-54. For comparison, the testimony of both Detective Engenlauf and Amina Shamsiddeen are quoted from the record below:

> MR. DOYLE: Will you describe the detail and nature of the conversation [with Amina Shamsiddeen]?
>
> DETECTIVE ENGENLAUF: Yes. I told Ms. Shamsiddeen that we had her nephew in custody and I would like her to come down to our headquarters. She told me that that would be impossible because that day was her sister Anne's wedding, and, obviously, the wedding was about to commence....I went on to warn her of her rights and his rights verbally over the phone. I then gave her an opportunity to speak with her nephew alone in private on the phone, which they did. After they spoke privately on the phone, I got back on the phone and I talked to her again. She told me that she had told Omar to cooperate with us. And Omar was within my visual sight, was on the phone also and he was nodding his head yes to me.

<u>N.T. 10/7/94</u> at 15-16.

> MR. SIEGEL: Did [Detective Engenlauf] tell you whether or not Omar was on the telephone?
> AMINA SHAMSIDDEEN: No, he didn't—Omar wasn't on the phone, no.
> ...

---

prosecution's case to a form of adversarial testing, and allow the jury to make their own credibility determination." <u>Defendant's Amended Post Conviction Relief Petition</u> at 10.

[24] *See supra* n. 11.

[25] The Trial Judge also heard testimony from Detective Frank Martin who had previously arrested Appellant on June 30, 1990 (on charges of robbery, assault, and other related charges). <u>N.T. 10/5/94</u> at 6-8. According to Detective Martin, Appellant chose to remain silent and refused to give a statement about those charges. <u>Id.</u> This was part of the prosecution's evidence that Appellant was generally aware of his right to remain silent when he gave his statement in the instant case. <u>Id.</u>

[26] According to Philadelphia police department policy at the time, an interviewing officer had to make an effort to locate an "interested adult" before questioning a juvenile. <u>N.T. 10/7/94</u> at 38. Appellant identified Amina Shamsiddeen as his guardian. <u>Id.</u> at 14-17.

11

MR. SIEGEL: And did [Detective Engenlauf] ask you or did he tell you, I should say, why he called you in the first place?

AMINA SHAMSIDDEEN: No, just that Omar was arrested and Omar needed someone to be here with him so they could take a statement from him.

MR. SIEGEL: ...Did [Detective Engenlauf] ask you whether he could speak with Omar?

AMINA SHAMSIDDEEN: Yes, he did

MR. SIEGEL: And what did he ask you specifically, if you recall?

AMINA SHAMSIDDEEN: He said that—he said the Detective—the other Detective that was listening in was there just to witness everything that I said to him. And could they get permission from me to question Omar, and I told them no.

MR. SIEGEL: And how did you express that? I mean, did you just say no or did you explain yourself?

AMINA SHAMSIDDEEN: I said, no, do not question Omar and do not make him sign anything until I get there. I said I'm going to be there, I may be late, I don't know what time I'll be there, I'm sure Omar's not going anywhere, but I'll be there.

...

MR. SIEGEL: Now, did the Detective at any time tell you what rights Omar had?

AMINA SHAMSIDDEEN: No.

MR. SIEGEL: You know the right to an attorney, the right to be silent, that type of thing?

AMINA SHAMSIDDEEN: No, no.

N.T. 10/7/94 at 49-53.

At the conclusion of this hearing, the Trial Judge denied the Motion to Suppress. [27] In doing so, the obvious inference is that the Trial Judge made a credibility ruling in favor of the Commonwealth's witness and found Amina Shamsiddeen's version of the events to be un-persuasive.[28] It is thus plausible that, given the Judge's apparent lack of faith in the credibility of Amina Shamisiddeen, Appellant's trial counsel could have reasonably decided that it was not prudent to put her before the jury. Furthermore, it is clear that, as Appellant's guardian, she would likely be regarded by the jury as having an inherent bias in favor of Appellant.

Appellant has failed to present any evidence to establish that trial counsel had no reasonable basis for not calling Amina Shamsiddeen to testify during trial and there are logical reasons why an experienced defense attorney would not call her testify. Furthermore, Appellant has failed to produce any evidence indicating how Appellant was prejudiced by trial counsel's decision not to call Amina Shamsiddeen to testify at trial. As Appellant has thus failed to satisfy

---

[27] See supra n.11 (explaining why it is clear that Judge Fitzgerald denied the Motion to Suppress, even though there is no copy of this denial on the record nor any explicit statement of denial on the docket).

[28] Indeed, the courts of this Commonwealth have held that "it is exclusively the province of the suppression court to determine the credibility of [] witnesses and the weight to be accorded to their testimony." Com. v. Fitzpatrick, 666 A.2d 323, 325 (Pa. Super. Ct. 1995) (citing Com. v. Neely, 444 A.2d 1199 (Pa. Super. Ct. 1982)).

12

the each of the stringent requirements necessary to prove ineffective assistance of counsel, this Court found this claim to be without merit.

Appellant's next ineffective assistance of counsel claim is that his trial counsel gave inadequate advice regarding whether Appellant should testify at trial. To succeed on this ineffective assistance of counsel claim, Appellant was required to demonstrate that counsel gave specific advice "so unreasonable as to vitiate a knowing and intelligent decision to not testify on his own behalf." Com. v. Alderman, 811 A.2d 592 (Pa. Super. Ct. 2002). In addition, "it is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." Com. v. Lawson, 762 A.2d 753, 755 (Pa. Super. Ct. 2000) (citing Com. v. Fletcher, 750 A.2d 261, 274-75 (Pa. 2000); Com. v. Schultz, 707 A.2d 513, 520 (Pa. Super. Ct. 1997) ("While, in retrospect, appellant may believe her failure to testify prejudiced her, the fact remains that appellant's decision was fully informed and voluntary. As such, neither trial nor appellate counsel may be deemed ineffective in this regard.")).

On October 18, 1994, the last day of his trial, the trial judge conducted a full colloquy of Appellant regarding his constitutional rights as it relates to testifying on his own behalf. N.T. 10/18/94, at 4-7. Relevant parts of this extensive questioning are quoted from the record below:

> THE COURT: Have you had a chance to speak to Mr. Siegel in regards to whether you should use your constitutional right to testify in your own case?
> THE DEFENDANT: Yes, your Honor.
> ....
> THE COURT: And is it your own personal decision, taking into account the advice you have received as well as your own thinking, to not take the witness stand in this case and testify; is that your decision, sir?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And you do have a full understanding that...this is your case, you have a constitutional right to testify which no one can take away from you, including this court, your attorney, the D.A., or anybody else; do you understand that?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And has anybody threatened you, forced you, coerced you, or tricked you or offered you anything of value to get you to give up your constitutional right to testify in this case?
> THE DEFENDANT: No, your Honor.
> THE COURT: And, therefore, it's your decision after these consultations, using your own personal reasoning and thinking that you have made a decision not to testify in this case, is that correct?

13

THE DEFENDANT: Yes, your Honor.
Id. at 4-6.

At the conclusion of this colloquy, the trial judge concluded that Appellant's "decision not to testify in this case and giving up this constitutional right is made knowledgeably, and without threat, fear, or force of any kind... [and] as a matter of fact, matter of law that you have made a voluntary decision and an enlightened decision to not testify in this case." Id., at 6-7. In light of Appellant's knowing, voluntary, and intelligent waiver of his right to testify, he cannot now claim ineffective assistance of counsel.

Additionally Appellant has failed to offer any evidence whatsoever as to the nature of his testimony, had he testified, and how his testimony would have changed the outcome of the trial. Therefore, this Court concluded that this claim was without merit.

Appellant's fourth and seventh claims allege that he received ineffective assistance of counsel because trial counsel failed to object to the trial court's jury instructions on accomplice liability. In his PCRA Petition, Appellant argues that the jury instructions given at his trial were erroneous because the "general" accomplice liability instruction contradicted the more specific first-degree murder accomplice liability instructions. Defendant's Amended Post Conviction Relief Act Petition 12/21/2012, at 13-14. While it is true that a trial court commits harmful error if it instructs the jury that, for first-degree murder, an accomplice can be found guilty *even if he did not have the specific intent to kill*, Com. v. Huffman, 638 A.2d 961, 964 (Pa. 1994), that is not at all what occurred in the instant case. To state Appellant's argument more precisely, he argued that the jury at his trial was not given a clear understanding that a specific intent to kill is a necessary component to find him guilty of first-degree murder through accomplice liability. To support this allegation, Appellant incorrectly indicates that there was a gap in between the "general" accomplice liability instruction and the more "specific" accomplice liability instruction for first degree murder. N.T. 10/18/94 at 14. However, the trial transcript indicates that these two instructions ("general" and "specific") were read to the jury consecutively, one after the other, and were not, in fact, two separate and conflicting instructions as alleged by Appellant. N.T. 10/18/94 at 90-91. The "second," more "specific" instruction on first-degree murder accomplice liability, read directly after the general accomplice liability instruction, merely clarified this type

14

of liability in a first-degree murder context. Id.; *see* Com. v. Cox, 863 A.2d 536, 549-50 (Pa. 2004) (holding that jury instructions must be read as a whole to support a claim of error, not in separate portions). Appellant was charged with multiple offenses, and a general accomplice liability instruction was necessary to lay the foundation for each offense, before elaborating on the additional, specific components needed for a finding of guilt for each specific offense.

In the instant case, the "specific" instruction on accomplice liability for first-degree murder *specifically states* that the jury must find "beyond a reasonable doubt that the evidence established that the defendant possessed a *specific intent* to facilitate the crime of murder." N.T. 10/18/94, at 91 (emphasis added). This is in direct contrast to Huffman, in which the trial court erroneously instructed the jury that they need *not* find specific intent to find the defendant guilty. 638 A.2d at 964.[29] Further, Appellant failed to demonstrate how the allegedly erroneous instructions would have prejudiced him or would have changed the outcome of the trial. Indeed, "a bald averment of cumulative prejudice" without a specific, reasoned, legally and factually supported argument does not constitute a claim under the PCRA. Com. v. Hutchinson, 25 A.3d 277, 319 (Pa. 2011). Absent this elaboration and any rational legal or factual argument of prejudice, this Court concluded that Appellant's fourth claim is without merit.

Appellant's seventh claim made on his 1925(b) Statement is "that the defendant was victimized by ineffective assistance of counsel where counsel failed to object to *extraneous matters* being entered into the general accomplice instruction which *exceeded* the charge in the *Bill of Information*." 1925(b) Statement at 2 (emphasis added). The courts of this Commonwealth have held that when issues in the 1925(b) Statement are "too vague for the trial court to identify and address, [it] is the functional equivalent of no concise statement at all." Com. v. Smith, 955 A.2d 391, 393 (Pa. Super. Ct. 2008). Any issues that are not raised in a concise statement are waived for appellate review. Id.

---

[29] Appellant also cites a Third Circuit case in which he claims "identical" jury instructions were found to be erroneous. Defendant's Amended Post Conviction Relief Act Petition 12/21/2012, at 14 (*citing* Laird v. Horn, 414 F.3d 419, 425-27 (3d Cir. 2005)). However, the jury instructions found erroneous in Laird v. Horn are distinctly different than the instructions in the instant case. In Laird, specific intent is *not mentioned at all* in the court's entire instruction on accomplice liability, but is only mentioned, thirty pages later in the record, as an element of first-degree murder. Id.

15

After an in-depth review of the record in this case, this Court is at a loss as to what Appellant's seventh claim pertains to, as he does not refer to any "extraneous" matters when discussing errors with the accomplice liability instruction in his PCRA petition. Defendant's Amended Post Conviction Relief Act Petition 12/21/12 at 12-14. Further, this Court can find no occurrence of "extraneous" matters being added to the accomplice liability instruction on the record. The only other incident involving the accomplice liability instructions occurred during jury deliberations. In response to a request by the jury to clarify the difference between first-degree murder and third-degree murder, the trial judge re-read the charges for both crimes and for accomplice liability, *verbatim*, as they had been read to the jury previously. N.T. 10/19/94 at 4-19. Appellant's trial counsel did object to the addition of the charge of accomplice liability and to the judge's re-reading of the instructions, arguing that it placed an unfair emphasis on this instruction. Id. However, the trial judge overruled this objection, stating that the instruction on accomplice liability was the exact same as had been read to the jury before and was legally accurate, meaning that the jury would not be unfairly prejudiced by this additional clarification. Id. There was no discussion on the record of any "extraneous matter" that was added to the accomplice liability instruction, nor any reference to a "Bill of Information." Id. Accordingly, without any indication on the record, or in Appellant's filings, of what this seventh claim may refer to, this Court finds that it is both waived and without merit.

Appellant's fifth claim of ineffective assistance of counsel pertains to trial counsel's failure to request an individual colloquy of the jurors to evaluate the potential prejudice resulting from communication between members of the jury and the outside world. The incident that Appellant is referring to occurred on October 13, 1994, the night before his jury trial started. N.T. 10/14/94, at 38-39. Juror Number Six was approached by someone on the street by and asked about her involvement in the trial, with the ensuing conversation being relayed to the trial court as follows:

> COURT CRIER: Basically she said that last night while she was walking on the street they asked her about the jury duty and what happened, and she's [sic] says, 'I was picked for a case that happened in South Philly around 18th street.' And a person she was talking to said, 'Oh, my husband witnessed the murder that happened down there about that time.' And she said, basically, 'I don't want to talk about it' and, you know, that was it. 'I can't discuss it with you.' And she heard about anybody discussing the case, she thought she should tell somebody.

N.T. 10/14/94, at 38-39.

16

Pennsylvania law "requires a showing that *ex parte* communications with a juror resulted in prejudice in order to warrant relief." Com. v. Daniels, 104 A.3d 267, 296 (Pa. 2014). Thus, a juror's contact with the outside world regarding the trial does not *intrinsically* create prejudice. Here, Juror Number Six was instructed to not talk to anyone about the case, and that is exactly what she did, telling the person that approached her that she could not discuss Appellant's case.

Tellingly, Appellant does not attempt to show or explain how he was prejudiced by the juror's interaction. Instead, Appellant asserts that this interaction was *per se* prejudicial, citing a Third Circuit case in support of his argument, Gov't of Virgin Islands v. Dowling, 814 F.2d 134 (3d Cir. 1987). Defendant's Amended Post Conviction Relief Act Petition 12/21/2012, at 15. First, it is well established that federal case law is not binding upon the courts of this Commonwealth; but merely have persuasive value. Gutteridge v. A.P. Green Services, Inc., 804 A.2d 643, 651 (Pa. Super. Ct. 2002) (stating that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved); Com. v. Santarelli, 483 A.2d 895, 900 (Pa. Super. Ct. 1984) (finding the defendant's use of out-of-state cases as merely persuasive authority, not binding precedent).

Furthermore, Appellant's reliance on Dowling is misplaced. In Dowling, the trial judge received a note that the entire jury had been exposed to "extra-record" information about both the facts of the case and the defendant's past criminal record. 814 F.2d at 135. On appeal, the Third Circuit held that the district court's failure to conduct a *voir dire* of the jury, so as to determine what the jurors had actually heard, constituted reversible error. Id. That scenario, of course, stands in stark contrast to the instant case, where there is every indication on the record that Juror Number Six did not receive *any* "extra-record" information, and that she did not even discuss the case with the person who asked her about it. N.T. 10/14/94, at 38-39.

In addition, as with his previous allegations of error, Appellant fails to present the required specific, reasoned, legally and factually supported argument to prove ineffective assistance of counsel in this instance. Hutchinson, 25 A.3d at 319. Therefore, this Court

17

concluded that this claim was also waived and without merit.

Appellant's sixth claim is that he received ineffective assistance from both trial and appellate counsel by failing to raise, and preserve, the issue of evidence sufficiency related to the Criminal Conspiracy charge; however, this issue is moot. Appellant was found guilty of criminal conspiracy and was sentenced to a *concurrent* term of five to ten years incarceration on October, 20, 1994. N.T. 10/20/94, at 122. Therefore as of October 20, 2004, Appellant had served his entire sentence for criminal conspiracy. Even if there was an error with regard to the conspiracy charge, Defendant has already served his time for that charge, and, regardless, is still serving a sentence of life imprisonment without the possibility of parole for the charge of first-degree murder. Appellant's allegations of error regarding the imposition of a lesser sentence for Conspiracy are irrelevant.

Moreover, this claim would also fail on its merits. Appellant claims that there is insufficient evidence on the record to show an "agreement" between him and his co-conspirators to engage in a crime, as required by Pennsylvania law for a conviction of criminal conspiracy. *See* 18 Pa.C.S. § 903(c); Com. v. Montalvo, 956 A.2d 926, 932 (Pa. 2008). The law in Pennsylvania is clear however, that such an "agreement" does not have to be explicit or formal, as it can be implied or inferred through actions. Com. v. Kennedy, 453 A.2d 927, 929-30 (Pa. 1982); Com. v. Woodard, 614 A.2d 239, 243 (Pa. Super. Ct. 1992). Mere association with the perpetrators and mere presence at the scene is not enough—it must be shown by the prosecution that a defendant was an "active participant in the criminal enterprise." Com. v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. Ct. 2002). Here, the record is clear that Appellant participated in the shooting of Thomas Dorsey with potentially three other perpetrators. N.T. 10/17/94 at 141-51. Only eight of the shell casings found at the scene, as well as only two out of the sixteen wounds on Thomas Dorsey, were a match to Defendant's gun, id., and even Appellant admitted, in his statement to detectives, that he was not the only one shooting at Dorsey. N.T. 10/17/94 at 30-36. Therefore, this Court concluded that this claim was both moot and without merit.

Appellant's eighth and final claim is that the PCRA court erred when it denied his request for funding to pay for psychologist and investigative services. Although the purpose of

18

requesting these funds is not described in Appellant's 1925(b) Statement (or in his most recent PCRA Petition), Appellant did state, in a proposed order submitted to this Court in 2014, when Appellant **first** requested these services, that the purpose of the request was for use at the time of a **re-sentencing** hearing. Defendant's Proposed Order 3/5/14 at 1. As the law currently stands,[30] Appellant is not eligible for a resentencing hearing, as his sentence was legal. 42 Pa. C.S. § 9781. This request by the Appellant has nothing whatsoever to do with the original trial or sentencing and is thus irrelevant for these PCRA proceedings. As such this Court dismissed that claim as being without merit.

## III.    CONCLUSION

In summary, this Court has, once again, carefully reviewed the entire record and has concluded that all PCRA claims made by Appellant are without merit. As such, this Court respectfully requests that the instant appeal be denied.

BY THE COURT:

J.

---

[30] *See* discussion of a pending United States Supreme Court case, Montgomery v. Louisiana, *supra* n.23.

19